[Crim. No. 1770.  First Appellate District, Division One.—March 13, 1934.]

THE PEOPLE, Respondent, v. RAY COSBY, Appellant.

Alfred J. Hennessy for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

THE COURT. — The defendant was charged and con-
victed of the crime of assault with intent to commit rape.
From the judgment and from the order denying his motion
for a new trial he has appealed.

Appellant contends that the trial court erred in admitting
certain testimony offered by respondent, in refusing to give
certain instructions asked by appellant, and in giving cer-
tain instructions for respondent. In order that we may
intelligently pass upon these contentions it is necessary that
we briefly review the facts. Elinor Bothello testified that
about two days before the 17th of August, 1933, she placed
an advertisement soliciting work in the "Oakland Tribune",
stating therein her name and telephone number; that on
August 17, 1933, she received a telephone call from a man
who she afterward discovered to be the appellant. He
made some inquiries from her over the telephone and then
asked her to come to 1607 Grove Street. Shortly thereafter
she did this, and found that the building at 1607 Grove
Street was an old-fashioned residence that had been con-
verted into housekeeping rooms. When she arrived there
the appellant was sitting on the steps of the building and
after a few words he asked her to step upstairs to his apart-
ment where he could take down some of her references.
She went with him to his apartment. She sat down in a
rocker and he occupied a chair near a table. He told her
he was opening a chain of restaurants; that he was up from
Los Angeles to open them and was bringing his own help,
but there was an accident and the help were disabled so
that they could not go ahead with the work. After some
further talk he asked her what wages she would want as
cashier and she told him she would accept minimum wages.
He replied that he never paid any of his help less than $90
a month. He suggested to her that they would gamble
with cards to determine whether or not they would have
sexual intercourse. She told him she would not gamble
and got up from the chair in which she had been sitting,
when he grabbed her and threw her upon a near-by couch.
She struggled with him, but he held her down, with one
hand on her breast, and leaned over her and slipped the
other hand under her clothes and along her leg and about
halfway above her knee, and in so doing tore her under-
clothes. She drew up her legs and kicked him with such

force that she threw him off of her and back upon the couch. During the early part of the conversation between them he had stepped out of the room twice; the last time he came in he locked the door. When she had kicked him off of her, she went to the door and tried to open it. He got up, followed her and tried to grab her. She gave him a push and he fell over the chair in which he had been sitting and she then unlocked the door and left.

▮ Over the objection of appellant, but only for the limited purpose of tending to establish that he had a common plan or scheme of luring women to his apartment for the purpose of ravishing them, the trial court permitted respondent to produce testimony that on two previous occasions he had lured women to his apartment under similar circumstances to those adopted with Mrs. Bothello. On one of these occasions, the 25th of May, 1933, he met Mrs. Pearl Banks through the People's Employment Agency, where he had listed himself to obtain women for the purpose of selling chicken pies. Under the pretense of employing her, he induced her to accompany him to his apartment and while there, after a conversation similar to the one he had with Mrs. Bothello, he attempted by force to ravish Mrs. Banks. Again, on August 8, 1933, he lured Miss Miriam Cochran to his apartment under pretense of employing her, and indulged in similar suggestive, lewd talk.

John Mulhern, inspector of the Oakland police department, testified that on August 20, 1933, he had a talk with appellant in the city jail. In that conversation he told Mulhern that he did not know either Mrs. Bothello or Mrs. Banks; that he never told anyone he would give them employment.

Appellant, testifying in his own behalf, said that his occupation was that of a gardener and house painter; that he did not seek to employ these women for his own work but for others; that he did not molest Mrs. Bothello or the other women, nor did he attack any of them.

It is apparent, considering the evidence produced by respondent, that appellant devised the scheme or plan of luring women to his apartment for the purpose of gratifying his lust; that he falsely represented to the employment agency that he was engaged in a business that required the employment of women; that in pursuance of such design or plan he called up women who advertised for em-

ployment and made appointments with them at his apartment; that his plan or scheme was to lure them to his apartment under promise of providing them lucrative employment; that when he had them there he indulged in lewd and suggestive language, and when these lewd suggestions did not meet with approval he attacked them and endeavored by force to accomplish his purpose. ■

While it is the general rule that a defendant in a criminal case cannot be tried for any other offense than that with which he is charged in the information, and that evidence of other and distinct offenses is not admissible, still there are exceptions to this general rule, one of which is that where several crimes are committed as part of one scheme or plan, all of the same general character, tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime for which the prisoner is being tried, as tending to show logically that the crime in question was part of such common scheme. (8 Cal. Jur. 69; *People* v. *Francisco,* 112 Cal. App. 442 [297 Pac. 34]; *People* v. *Robinson,* 107 Cal. App. 211 [290 Pac. 470]; *People* v. *Barnes,* 111 Cal. App. 605 [295 Pac. 1045].)

In the case of *People* v. *Northcott,* 209 Cal. 639 [289 Pac. 634, 70 A. L. R. 806], the prosecution was permitted to introduce testimony of other similar acts and conduct upon the part of appellant to show the general scheme and plan upon which the appellant operated. At page 652 the court said: "Appellant next complains of the introduction of certain testimony which it is asserted tended to prove the commission or attempted commission of separate and distinct crimes having no connection with or bearing on 'the charges then pending against him. . . . Stephen Black, a minor boy called by the People, testified that appellant had taken him to the ranch on divers occasions and on one of these visits had attempted to abuse him. The witness Junior Thompson, also a small boy, testified that appellant had made indecent advances to him. . . . It was for the purpose of establishing this general scheme or plan that the prosecution introduced the testimony above set forth. The testimony of the witnesses last mentioned was, therefore, properly admitted in evidence for the purpose of showing the motive of the defendant in committing the offenses charged, and establishing a well-

planned scheme of appellant for abducting young boys in order that he might satisfy his abnormal desires, and then later kill them in order to cover up his crime. (*People* v. *Arnold*, 199 Cal. 471, 486 [250 Pac. 168] ; *People* v. *Nakis*, 184 Cal. 105, 114 [193 Pac. 92] ; *People* v. *Martin*, 50 Cal. App. 71, 73 [194 Pac. 522].)'' In the Northcott case, as in the instant case, there was a general scheme and plan under which appellant was operating, and evidence of other similar acts of his was admissible as tending to show such common scheme or plan.

In the case of *People* v. *Knight*, 62 Cal. App. 143 [216 Pac. 96, 97], the court, after stating that it was the general rule that evidence of a distinct crime unconnected with that charged in the indictment cannot be received for the purpose of showing a greater probability that the defendant committed the offense charged, said: ''Certain exceptions exist, however, to the rule just stated which have been permitted from necessity to aid in the detection and punishment of crime. Among these is the rule that evidence of other crimes is competent to prove the specific crime charged when it tends to establish intent, the absence of mistake, or accident, or a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. (Wharton's· Criminal Evidence, 10th ed., p. 73; Wigmore on Evidence, sec. 357 et seq.; *People* v. *Sindici*, 54 Cal. App. 193 [201 Pac. 975].)''

▮ Appellant contends that the court erred in refusing to give the following instruction: ''You are instructed that the failure of the complaining witness to make an outcry has a tendency to refute the hypothesis of guilt, but it is not conclusive.'' Had the appellant been charged with rape, then under certain conditions the instruction might have been proper, but in the instant case the evidence clearly shows that the prosecuting witness was able to resist his attack without the necessity of resorting to an outcry. Had he succeeded in accomplishing the rape despite her resistance, and the location was in a neighborhood where her outcries would have been heard, then the instruction might have been proper. (*People* v. *Norrington*, 55 Cal. App. 103 [202 Pac. 932].) Appellant further contends that the court erred in giving and refusing certain

other instructions. We do not feel called upon to set them forth in detail. We have given them careful examination and from such examination are satisfied that the trial court fully and fairly instructed the jury.

The order denying appellant's motion for a new trial, and the judgment, are affirmed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 16, 1934.