33 So.2d 488

## McKENZIE v. STATE.
### 6 Div. 490.

Supreme Court of Alabama.
April 10, 1947.

Rehearing Denied Feb. 3, 1948.

Wm. N. McQueen, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

SIMPSON, Justice.

The defendant was convicted of an assault with intent to rape Miss Lois Eddins. The Court of Appeals affirmed as proper the introduction of proof tending to show defendant's assault with intent to rape a Mrs. Outlaw at the same place a few weeks after the alleged assault on the prosecutrix, basing the decision on the intent rule enunciated by Wigmore, Vol. II, § 357(3d Ed.), and applied in Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied, 240 Ala. 52, 197 So. 81.

The rationale underlying the principle of admissibility of evidence of such acts of like kind in this sort of case is that while the criminal intent accompanying one such act might not be clear, yet other assaults seemingly with criminal purpose to forcibly ravish, if of recent origin with reference to the crime on trial, would tend to negative the claim of innocent intent and render admissible proof of such like acts or offenses.

In laying down the general rule, Wigmore says the question is approached "from the point of view of the doctrine of chances,—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them. [After illustration] In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i. e. criminal, intent accompanying such an act; * * *." Wigmore, Vol. II, p. 196, § 302(3d Ed.).

In applying the stated principle (§ 302) to the offense of assault with intent to rape, this authority asserts:

"The Intent principle (ante, § 302) clearly applies where the act is assumed as otherwise proved and the intent is in issue; i. e. in such cases, former acts of the kind are relevant to negative the intent as being of any other kind than to commit rape. (a) Where the charge is of assault with intent, the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise (ante § 194). There need be no limitation as to the person assaulted, because the only purpose is to negative any other than the rape intent, and a previous rape-assault on another woman has equal probative value for that purpose, for it is the general desire to satisfy lust that is involved in this crime, and no particular woman is essential for this. Accordingly, where the charge is assault with intent, former acts of the sort should be received without any limitation except as to time; * * *." Wigmore, Vol. II, p. 265, § 357 (3d Ed.).

It is to be noted that as to this crime, while the text seemingly approves the admission of proof of "former acts of the kind," it does not limit the proof to prior acts, nor does it denounce as inadmissible recent similar acts subsequently occurring, and we can perceive no sound basis for a distinction. We find that this author indicates in prosecutions for abortion that the intent principle is available and that on this issue it is permissible to prove the nature and effect of the instruments or drugs used and the use of them on other occasions "either prior or subsequent" as tending "to

negative an innocent intent." § 359(2), p. 270. This court approved the introduction of proof of other offenses of similar character, whether prior or subsequent, on the question of identification in Johnson v. State, 242 Ala. 278, 5 So.2d 632, and from the language of that opinion we deduce that were the issue one of intent the same principle would be applied, and we so hold.

■ . Wigmore makes it clear that evidence which goes no further than showing character generally or disposition to commit crime is, of course, inadmissible (§ 190 et seq., Vol. I; § 402[c], Vol. II), but if such evidence goes further than showing character and bears probatively on the intent with which the act was committed, it is none the less admissible though it might also tend to discredit the defendant's character. It is deemed appropriate here to point out that in the case of Wilkins v. State, supra, the evidence of the other acts was admitted not to indicate the defendant's bad character generally or disposition to commit crime, but to show his peculiar and unnatural lustful desire for white women as bearing on the intent with which he assaulted the white woman in that case and as tending to negative any other but the rape intent. And as there observed, his previous misconduct, sexually, had been directed toward a particular class, i. e., white females; so, in that case, the night when he accosted the prosecutrix, it was a logical deduction which the jury could make, with the evidence of his previous conduct, that his intent was to gratify himself sexually, rather than to rob or to murder. 29 Ala.App. at page 354, 197 So. at page 79.

■ So, in the case now under review, while the evidence of an alleged attempt to rape Mrs. Outlaw might have had a tendency to show the defendant to be a bad man, it was not admissible on this basis but as tending toward the criminal intent and negativing the innocent intent (or any other, such as a simple assault) as regards the act committed on Miss Eddins. And this principle is emphasized in the instant case by the further fact the proof as to the attack on Mrs. Outlaw followed the like pattern or technique as to Miss Eddins, that is, luring her to the same secluded spot and first making use of the pretense of a lost bracelet and the like. People v. Cosby, 137 Cal.App. 332, 31 P.2d 218. Guided by this approved principle, we are in accord with the holding of the Court of Appeals that the evidence was competent. The single act perpetrated on Miss Eddins might have been plausibly claimed to have been done free of intent to ravish, and it was so claimed by the defendant, yet evidence of the recent other alleged attempt to ravish Mrs. Outlaw, executed in similar fashion and following a like pattern, tended to eliminate the probability ("chance," as Wigmore says) that the act on the prosecutrix was innocent of such intent and therefore was relevant evidence on this issue.

The judgment is affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.

LAWSON, J., concurs in the result.

BROWN and LIVINGSTON, JJ., dissent.

BROWN, Justice (dissenting).

The opinion of the court of appeals as a predicate for the admissibility of the testimony going to show what subsequently occurred between the defendant and Mrs. Outlaw, states: "The prosecutrix testified that the defendant approached her on the streets of Birmingham and invited her to go with him for an automobile ride. She reluctantly accepted, but did get in his car. Finally the appellant stopped the car on a by-road several miles out. There the defendant told her that he had previously lost a bracelet. After some casual search for the article which he claimed he lost, the accused began to make improper advances to her, accompanied with threats to do her bodily harm unless she acceded to his demands to have sexual intercourse. After much dissuasion on her part, the defendant abandoned his asserted aim and carried her back to the city. * * *"

This predicate is sufficient to justify a review of the ruling of the court of appeals which holds that the testimony is competent evidence. Birmingham Southern Ry. Co. v. Goodwyn, 202 Ala. 599,

81 So. 339; Reichert Milling Co. v. George, 230 Ala. 3, 162 So. 393.

There is nothing in the circumstances stated tending to show that the defendant entertained the intent to ravish the prosecutrix. She was within his power and his "aim", whatever it may have been, was not frustrated or interrupted by any outside event or occurrence, nor did she escape from him. She was peacefully returned to the city unharmed. In the absence of tendencies in the evidence arising out of the defendant's acts and dealings with the prosecutrix going to show that he attempted to accomplish penetration accompanied by the intent to do so by force without her consent, the subsequent occurrence between Mrs. Outlaw and defendant sheds no light on the conduct of defendant towards Miss Eddins. Defendant did not attempt to have sexual intercourse without her consent. On the contrary, he voluntarily "abandoned his asserted aim" and returned prosecutrix to the City of Birmingham without having sexual intercourse with her.

In Dudley v. State, 121 Ala. 4(7), 25 So. 742, 743, it was observed: "In Jones' Case, [Jones v. State, 90 Ala. 628, 8 So. 383, 24 Am.St.Rep. 850], the criminal purpose of the defendant was disclosed by him, but he used no violence on the prosecutrix. * * * 'If the evidence raises a mere suspicion, or, admitting all it tends to prove, defendant's guilt is left in uncertainty, or dependent upon conjecture or probabilities, the court should instruct the jury to acquit. The evidence should be of such character as to overcome, prima facie, the presumption of innocence. * * *.' * * *."

When these facts are viewed in the light of the presumption of innocence which attended defendant as a matter of evidence throughout his trial, the evidence in this case is not sufficient to authorize the court to submit to the jury the question of the intent to rape. Toulet v. State, 100 Ala. 72, 14 So. 403; Doss v. State, 220 Ala. 30, 123 So. 231, 68 A.L.R. 712. The evidence going to show defendant's relation with Mrs. Outlaw does not tend to show an intent to ravish. He did not ravish Mrs. Outlaw, did not attempt to force

penetration without her consent, but likewise "abandoned his aim" and returned her to the city without any sort of abuse. This evidence, instead of showing or tending to show an intent to ravish, as the majority opinion assumes, shows just the contrary,—that defendant's "aim" was to procure sexual relations by consent. There was no question of identity of defendant. This was admitted.

The testimony in respect to defendant's dealings with Mrs. Outlaw was erroneously admitted, was highly prejudicial and the verdict of conviction for the felony charged in the indictment should not be allowed to stand. People v. Stewart, 85 Cal. 174, 24 P. 722; McAllister v. State, 112 Wis. 496, 88 N.W. 212.

By allowing the state to offer proof of the occurrence between the defendant and Mrs. Outlaw is to infringe the constitutional right of the defendant to demand the nature and cause of the accusation against him. State v. Jensen, 70 Or. 156, 140 P. 740. See also State v. Walters, 45 Iowa 389; State v. Greco, 7 Boyce (30 Del.) 140, 104 A. 637; Brockman v. State, 60 Okl. Cr. 75, 61 P.2d 273. To justify the admission of the evidence showing the transaction between defendant and Mrs. Outlaw the majority assume that he made an attempt to ravish her accompanied by the intent to do so and they assume to convict him of that offence with which he is not charged in the indictment. "Conviction upon a charge not made would be a sheer denial of due process." Thornhill v. Alabama, 310 U.S. 88, 96, 60 S.Ct. 736, 84 L.Ed. 1093; De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278; Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484.

I therefore respectfully dissent.

LIVINGSTON, Justice (dissenting).

The indictment charges appellant with the offense of assault with intent to rape Lois Eddins on June 13, 1945. The principally litigated question is the admissibility of facts and circumstances alleged to show that appellant assaulted one Mrs. Outlaw on August 4, 1945, with the intent to rape her.

As stated by the Court of Appeals, the inquiry in the instant case is narrowed to the question of intent: the intent with which appellant assaulted Lois Eddins on June 13th, if, in fact, he did assault her. The evidence is sufficient, if believed, to establish the assault.

It is not proper to raise a presumption of guilt of one charged with crime on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. Logically, the commission of an independent crime is not proof in itself of the commission of another offense. Yet it cannot be said to be without influence on the mind, for certainly if one is shown to be guilty of another crime, equally heinous, it more readily prompts belief that he might have committed the one with which he is charged. It therefore predisposes the mind of the juror to believe the defendant guilty of the crime charged.

But it is not permitted to give in evidence other crimes of defendant, unless they are so connected by circumstances with the particular crime charged as that proof of one fact with its circumstances has some bearing upon the issue on trial other than to show in the defendant a tendency or disposition to commit the crime with which he is charged.

It is often said that the State cannot, upon trial under an indictment for one crime, prove facts showing that the defendant committed another crime,—a statement which is incorrect without the addition of the qualification,—unless the facts establishing the other crime also tend to establish the commission by the defendant of the crime for which he is being tried, other than through mere propensity.

In the case of State v. Lapage, 57 N.H. 245, 289, 24 Am.Rep. 69, a case often cited and quoted, it was said by Cushing, C. J.:

"I think we may state the law in the following propositions: (1) It is not permitted to the prosecution to attack the character of the prisoner, unless he first puts that in issue by offering evidence of his good character. (2) It is not permitted to show the defendant's bad character by showing particular acts. (3) It is not permitted to show in the prisoner a tendency or disposition to commit the crime with which he is charged. (4) It is not permitted to give in evidence other crimes of the prisoner, unless they are so connected by circumstances with the particular crime in issue as that the proof of one fact with its circumstances has some bearing upon the issue on trial other than such as is expressed in the foregoing three propositions. * * * It should also be remarked that this being a matter of judgment, it is quite likely that courts would not always agree, and that some courts might see a logical connection where others could not. But however extreme the case may be, I think it will be found that the courts have always professed to put the admission of the testimony on the ground that there was some logical connection between the crime proposed to be proved other than the tendency to commit one crime as manifested by the tendency to commit the other."

The same principle is found in a rule suggested by the American Law Institute's Model Code of Evidence, which reads as follows: Rule 311.–"Subject to rule 306, evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that he committed a crime or civil wrong on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally."

The Court of Appeals quotes the following from Wigmore on Evidence (3d ed.) section 357, pages 265–266: "The Intent principle (ante, § 302) clearly applies where the act is assumed as otherwise proved and the intent is in issue: i.e. in such cases, former acts of the kind are relevant to negative the intent as being of any other kind than to commit rape. (a) Where the charge is of assault with intent, the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise (ante, § 194). There need be no limitation as to the person assaulted, because the only purpose is to negative any other than the rape intent, and a previous.

rape assault on another woman has equal probative value for that purpose, for it is the general desire to satisfy lust that is involved in this crime, and no particular woman is essential for this. Accordingly, where the charge is assault with intent, former acts of the sort should be received without any limitation except as to time."

The Court of Appeals cites the following cases to support its holding that the evidence detailing appellant's actions toward and with Mrs. Outlaw was admissible on the trial of appellant for the offense of assault with intent to ravish Lois Eddins. Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So.2d 590; Brown v. State, Ala.App. 22 So.2d 445; Lee v. State, 246 Ala. 69, 18 So.2d 706; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Robinson v. State, 243 Ala. 684, 11 So.2d 732; Johnson v. State, 242 Ala. 278, 5 So.2d 632; Jackson v. State, 229 Ala. 48, 155 So. 581.

We have no quarrel with Dean Wigmore's statement of the rule. It has been approved by this Court. See, Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied 240 Ala. 52, 197 So. 81.

But the foregoing quotation from Wigmore is only a partial statement by that author relative to the "theory of evidencing intent." It is only applicable in certain cases, and under certain circumstances.

For a better understanding of the principles involved, we quote further from the second volume, third edition, of Wigmore on Evidence, at page 192:

§ 300. "In the two foregoing chapters have been examined the principles upon which Knowledge, Intent and Design may be evidenced. It remains to examine here the admissibility of similar offenses or other acts (i. e. similar to the one charged) offered for the purpose of showing such a Knowledge, Intent or Design. Since the conditions may differ under which the same conduct will evidence one or another these propositions, it is essential to compare the respective conditions before determining what test to apply to the offered evidence. Practically, the difference of theory may be important; for if these conditions are less stringent for one purpose than for another, and if the one purpose is by the nature of the issue a proper one, while the other is not, all will depend on the precise purpose involved and the requirements appropriate to it. * * *

"(2) Intent involves often nothing more than knowledge or hostile feeling; or, what is practically not very different, if knowledge or hostile feeling (malice) can be shown specifically, there may be inferred immediately the criminal intent, without further evidence. But intent more frequently signifies (ante, § 242) merely the absence of accident, inadvertence, or casualty,—a varying state of mind which is the contrary of an innocent state of mind, whatever may be pointed out by the nature of the crime as an innocent state of mind. Thus, in homicide the criminal intent may signify the absence of good faith as to self-defense or the absence of inadvertence; in assault with intent to rape, the criminal intent is a design to rape, instead of any other design; in embezzlement, the criminal intent is a will to hold the money unlawfully, as distinguished from a will to hold it for the owner or from a merely inadvertent possession. This element, then, of Intent—simple in its generality, yet changeable—is a different thing from Knowledge. In a given offense—as in uttering counterfeit money—the proof of Knowledge may practically affect the proof of Intent; but in such a case the evidence is directed specifically to show Knowledge and is governed by the rules appropriate to that subject. But if the issue does not involve specifically the element of Knowledge, then the rules about evidencing Knowledge have no application. In short, Intent may sometimes be indirectly got at by proving Knowledge; but this is not necessary, nor is it (for most kinds of offenses) usual; and since in any case Intent may be conceived of apart from Knowledge, the mode of proving Intent is a problem distinct from that of proving Knowledge, even where the latter is also concurrently available.

"(3) Design. The peculiarity of Intent, as a 'factum probandum,' is that an act is assumed as done by the defendant, and the issue is as to the kind of state of mind ac-

184

companying it. Design or Plan, however (with reference to present bearings), is not a part of the issue, an element of the criminal fact charged, but is the preceding mental condition which evidentially points forward to the doing of the act designed or planned (ante, §§ 237, 242). Thus, the peculiarity of Design is that the act is not assumed to be proved, and the design is used evidentially to show its probable commission. It is obvious that something more definite and positive is here involved than in the case of Intent. In proving Intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it. In proving Design, the act is still undetermined, and the proof is of a working plant, operating towards the future with such force as to render probable both the act and the accompanying state of mind. The Intent is a mere appendage of the act; the Design is a force producing the act as a result.

"§ 302. Theory of evidencing Intent. To prove Intent as a generic notion of criminal volition or wilfulness, including the various non-innocent mental states accompanying different criminal acts, there is employed an entirely different process of thought. The argument here is purely from the point of view of the doctrine of chances,—the instinctive recognition of that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. Without formulating any accurate test, and without attempting by numerous instances to secure absolute certainty of inference, the mind applies this rough and instinctive process of reasoning, namely, that an unusual and abnormal element might perhaps be present in one instance, but the oftener similar instances occur with similar results, the less likely is the abnormal element likely to be the true explanation of them.

"Thus, if A while hunting with B hears the bullet from B's gun whistling past his head, he is willing to accept B's bad aim or B's accidental tripping as a conceivable explanation; but if shortly afterwards the same thing happens again, and if on the third occasion A receives B's bullet in his body, the immediate inference (i. e. as a probability, perhaps not a certainty) is that B shot at A deliberately; because the chances are extremely small; or (to put it in another way) because inadvertence or accident is only an abnormal or occasional explanation for the discharge of a gun at a given object, and therefore the recurrence of a similar result (i. e. discharge towards the same object, A) excludes the fair possibility of such an abnormal cause and points out the cause as probably a more natural and usual one, i. e. a deliberate discharge at A. In short, similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i. e. criminal intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent. The general canon of logical inference already examined (ante, §§ 31, 32) is here applied and illustrated.

"Such is the theory of evidencing Intent, as expounded, in various phrasings and for all sorts of offenses, in repeated judicial utterances."

§ 304. "Theory of evidencing Design or System. When the very doing of the act charged is still to be proved, one of the evidential facts receivable is the person's Design or Plan to do it (ante, § 102). This in turn may be evidenced by conduct of sundry sorts (ante, § 234) as well as by direct assertions of the design (post, § 1725). But where the conduct offered consists merely in the doing of other similar acts, it is obvious that something more is required than that mere similarity, which suffices for evidencing Intent (ante § 302). The object here is not merely to negative an innocent intent at the time of the act charged, but to prove a pre-existing design, system, plan or scheme, directed forwards

to the doing of that act. In the former case (of Intent) the attempt is merely to negative the innocent state of mind at the time of the act charged; in the present case the effort is to establish a definite prior design or system which included the doing of the act charged as a part of its consummation. In the former case, the result is to give a complexion to a conceded act, and ends with that; in the present case, the result is to show (by probability) the doing of the act designed.

"The added element, then, must be, not merely a similarity in the results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations. Thus, where the act of passing counterfeit money is conceded, and the intent alone is in issue, the fact of two previous utterings in the same month might well tend to negative innocent intent; but where the very act of uttering is disputed—as where the defendant claims that his identity has been mistaken—and the object is to show that he had a general system or plan of working off a quantity of counterfeit money and did carry it out in this instance, the fact of two previous utterings may be in itself of trifling and inadequate significance. So, on a charge of assault with intent to rape, where the intent alone is disputed, a prior assault on the previous day upon the same woman, or even upon another member of her family, might have probative value; but if the assault itself is disputed, and the defendant attempts, for example, to show an alibi, the same facts might be of little or no value, and it might be necessary to go further and to show (for example) that the defendant on the same day, with a confederate guarding the house, assaulted other women in the same family who escaped, leaving the complainant as the only woman accessible to him for his purpose. * * *

"It will be seen that the difference between requiring similarity, for acts negativing innocent intent, and requiring common features, indicating common design, for acts showing Design, is a difference of degree rather than of kind; for to be similar involves having common features, and to have common features is merely to have a high degree of similarity. This is another reason why the precedents are so difficult to reconcile; for the courts have not always perceived that there are in truth these two distinct purposes and therefore two distinct tests for such evidence.

"Nevertheless the distinction is a real one. It is to be seen in concrete illustrations, even though in abstract definition it is not easy to formulate. The clue to the difference is best gained by remembering that in the one class of cases the act charged is assumed as done, and the mind asks only for something that will negative innocent intent; and the mere prior occurrence of an act similar in its gross features,—i. e. the same doer, and the same sort of act, but not necessarily the same mode of acting nor the same sufferer—may suffice for that purpose. But where the very act is the object of proof, and is desired to be inferred from a plan or system, the combination of common features that will suggest a common plan as their explanation involves so much higher a grade of similarity as to constitute a substantially new and distinct test.

"An occasional error in judicial rulings is to require the higher conditions of the present test where only the preceding test (for Intent) is needed. Thus, to show that certain representations as to goods sold (the making of the representations and their falsity being assumed) were deliberately and knowingly made, and not innocently, the former making of like representations about the same goods to the same or other persons is clearly of value to negative innocent intent; yet in at least one jurisdiction, in such cases, the court has in terms required that these evidential instances shall be so connected by common features as to indicate a general fraudulent scheme or system. This is a misapplication of the stringent theory of Design or System to a case where the theory of Intent is alone involved. Such misapplications of the rigorous requirements of the Design principle are also met with in rulings upon other kinds of crimes; but the error involved in such rulings may be perceived by an analysis of the purposes of the evidence in a given case.

"Two necessary limitations are to be observed in the use this class of evidence of Design:

"(1) Anonymous acts are not available, as they are for evidencing Intent (ante, § 303); for the whole purpose of the evidence is to fix a design upon the defendant, as making it likely that he carried it out, and thus that it was he who did the act charged. Nevertheless, in the order of proof it may not be possible to evidence the defendant's connection with the previous acts until the acts themselves have been testified to; and hence the trial court, applying the general principle of conditional admissibility (ante, § 14) may admit the latter portion of the evidence on the assurance that the defendant's connection with those acts will later be duly evidenced.

"(2) The object being to argue to .the act charged from a design or plan to do it, the prior acts are received to show that system; since, however, it may require a number of acts and circumstances to furnish the desired mass of conduct illustrating this design or system, and since the production of only parts or fragments of it would in effect violate the principle and remain in evidence merely as affecting the defendant's character, the trial court must pass upon the offer beforehand, to see whether if offered in its entirety it satisfied the proper test and is sufficient to go to the jury; and (on the same principle of § 14, ante) must, if the offer is sanctioned, require an assurance that it will be forthcoming in its entirety. * * *

"§ 305. Criminality of Act Immaterial; Character Rule, distinguished. It has already been noted (ante, § 216) that the criminality of prior acts thus offered does not affect their admissibility. Either they are relevant, by the above tests, or they are not; if they are not, they are rejected because they are irrelevant; if they are, they are received in spite of their criminality. The only bearing of the latter quality is that, if they are irrelevant, it furnishes another reason for excluding them, namely the reason of Undue Prejudice, as enforced in the Character rule (ante, * 194); for these other criminal acts would not merely be irrelevant, but would go to evidence the defendant's character and career as bad and thus create undue prejudice,—a mode of argument against him that is forbidden by a. fundamental principle."

The question here is therefore one of relevancy. And, as was said in Levison v. State, 54 Ala. 520, and repeated in Lee v. State, supra:

"It is often a matter of great delicacy and extreme difficulty, to determine, in a criminal cause, whether a particular fact,. not bearing directly on the issue involved,. can be received as evidence. The rule is clear and well defined that facts and circumstances, which, when proved, are incapable of affording any reasonable presumption or inference in regard to the material fact or inquiry involved, are not admissible as evidence. The difficulty lies in its application."

Is the conclusion reached by the Court of Appeals supported by the cases cited by that court, and noted above?

In the Wilkins case, supra, the charge was assault with intent to rape. There was evidence that the defendant committed the assault. The intent with which the assault was committed was in issue. The intent could have been to rape, to rob, or to murder. Prior acts of indecent exposure of his person to other girls by the defendant were admitted. This evidence tended to show a desire to satisfy lust and thereby tended to negative the intent to rob or murder on the occasion named in the indictment. The acts did not show in the defendant a propensity to commit rape, but they did tend to render it less likely that he intended to rob or murder on the occasion complained of.

In the Lee case, supra, the indictment charged that the defendant did carnally know, or abuse in the attempt to carnally know Elise Lee, his own daughter, a girl under the age of twelve years. The injury was shown. The question was, what was he attempting to do? Was he attempting to punish her? Was his act, although injurious, accidental, inadvertent, done by mistake, or otherwise innocent? Was he attempting to have sexual intercourse with her? Prior attempts to have sexual intercourse with two of his other daughters, and actual intercourse with still another daugh-

ter, were admitted. This evidence tended to show an unnatural lust for his own daughter, and to make it less likely that he was attempting to do anything other than satisfy lust on the occasion complained of, or that the injury was accidental, inadvertent, or otherwise innocently inflicted. Under the particular circumstances of the case, we thought, and still think, the evidence was admissible.

The case of Brown v. State, supra, dealt with evidence of other acts between the same parties. Jackson v. State, supra, turned on the question of res gestae. While Johnson v. State, supra, involved the question of identity. The principles enunciated in these cases are not here applicable. On the question of identity, see Brasher v. State, Ala.App., 30 So.2d 26. Daniels v. State, supra, and Robinson v. State, supra, were decided on principles analogous to those stated in the Wilkins, Lee and Johnson cases, supra.

The design or plan principle is well illustrated in the case of People v. Cosby, 137 Cal.App. 332, 31 P.2d 218. In that case the proof showed that the prosecutrix had been lured to his apartment on the pretext of giving her employment after she had answered a newspaper advertisement, and after some discussion of details, on her refusal to consent to his advances he endeavored to forcibly ravish her. For the limited purpose of tending to prove that he had a common plan or scheme of luring women to his apartment for the purpose of ravishing them, evidence was pronounced by the California courts as admissible, that showed that on two previous occasions he had lured women to his apartment under similar circumstances to those adopted with the victim for which he was charged in the indictment of ravishing.

The Cosby case, supra, is a good exposition of the principle, but the evidence of defendant's conduct with Mrs. Outlaw in the case before us is not brought within the scope of this principle. The mere fact that the defendant took the two women in question to the same place, and after reaching the scene mentioned something about a bracelet to each of them, is to my mind wholly insufficient to bring the evidence within the last stated rule.

In the Cosby case, supra, the defendant denied the doing of the act. In the instant case, the defendant admitted that he attempted to have sexual intercourse with Miss Eddins, but denies that he intended to gratify or satisfy his desire by force and against her will. None other than rape intent is here involved. There is no occasion to negative any other intent unless we say that it was necessary to negative an innocent intent. Under the circumstances of this case, there was no element of mistake, inadvertence, accident or casualty, and as a consequence, no occasion to negative such an element.

No case is cited, nor has our search revealed one, which even remotely sanctions the admission of the testimony of Mrs. Outlaw under the particular circumstances of this case. But for the opinion of the majority, I would not have quoted so extensively from Wigmore on Evidence. In my opinion that authority completely refutes the idea of the admissibility of the Outlaw testimony on any theory. I am fully persuaded that the detailed facts and circumstances of the Outlaw episode can shed no light on the issue of intent involved in the Eddins case, other than by showing a mere inclination, disposition or propensity of the appellant to commit the crime charged in the indictment; and think it is inadmissible.

Holding to the view that the cause should be reversed and remanded to the Court of Appeals, I respectfully dissent.