Appellant was indicted by the August 1982 term of the Houston County Grand Jury for burglary in the second degree in violation of § 13A-7-6 (b), Code of Alabama 1975. He was charged with unlawfully entering the dwelling of Bulah Pynes with the intent to commit rape. Trial was had on October 26, 1982, with the jury finding appellant guilty as charged in the indictment. A sentencing hearing was held on November 16, 1982, at which appellant was sentenced to fifteen years' imprisonment. From that conviction he now appeals in formapauperis.
During the late evening hours of Wednesday, June 16, 1982, the victim was aroused from her sleep when appellant appeared at the doorway to her bedroom. Appellant had entered through a front room window and had used a flashlight to see inside the darkened home. Once he had reached the victim's bedroom, appellant turned on the bedroom light. Appellant instructed the victim to "lie still" as he climbed on her bed and exposed himself. After a period of time, appellant got off the bed and began to leave the victim's home. As he was leaving, appellant threatened to kill the victim if she did not stop a pending criminal proceeding filed by her against him. Appellant also threatened to do the same to the victim's two brothers if the proceeding was not dismissed. After appellant had left the home, the victim made no attempt to contact anyone. Appellant remained in the victim's home between thirty minutes to one hour. The victim testified that she had not given appellant permission to enter her home. The victim stated that she had known appellant all his life and, although he was stronger than she, she was not afraid of him.
The next morning, one of the victim's brothers came to her home and found the telephone lines leading into the house had been cut. A window was broken in the front room and its casing damaged. A bathroom window had also been partially broken and its casing recently damaged.
The victim testified that appellant had twice previously broken into her home. The first incident occurred in September, 1981. At that time appellant entered the house by breaking a window. He confronted the victim in her kitchen. Appellant left *Page 1310 
when the victim telephoned for aid. The second incident occurred in February, 1982. Appellant cut the outside telephone lines and entered the house by breaking in a door. The victim was in bed and appellant got in bed with her and "fooled" with her arm. The victim stated that appellant attempted to rape her, but due to his drunkeness, was unsuccessful.
Noah Guy, the victim's brother, testified that the victim was sixty-five years old and had been on medication for emotional and nerve problems for several years. Guy had been appointed the victim's guardian for a period of time ending in March, 1982, when the victim was certified to be sane and competent to manage her own affairs.
On June 17, Guy attempted to telephone the victim but to no avail. Afterwards, he went to his sister's home and asked her about her telephone. Guy found the outside telephone lines cut. The victim informed Guy of the incident the night before involving appellant. Guy then found the damaged front room and bathroom windows. He attempted to start the victim's car, but found that the coil wire had been removed.
Myras Granberry testified that around 5:00 or 5:30 p.m. on June 17, Guy asked him for assistance in cranking the victim's car. Granberry opened the hood of the car and found the coil wire missing.
Houston County Sheriff's Investigator Mike Gilley testified that he arrived at the victim's home around 2:00 p.m. on June 17 and investigated the instant incident. He examined the cut telephone lines and the damaged windows. He also found the latch to the door separating the hall and front room area from the bedroom of the victim's home broken. Gilley stated that the latch was on the bedroom side of the door and the door had been forced or pushed in from the hall and front room side. Gilley dusted the home for latent fingerprints, but did not find any that were legible and usable. Gilley's testimony concluded the presentation of the State's case in chief.
Appellant contends that the trial court erred in admitting the victim's testimony concerning his prior breakins of her home. We disagree.
The prior incidents were not remote in point of time, and were accomplished by similar means. In addition to the above, appellant was facing other criminal charges arising out of the prior incidents with the victim. Admission of the above testimony was clearly relevant to establish appellant's intent. If an accused is charged with a crime that requires a prerequisite intent, as in the case sub judice, then prior or subsequent criminal acts are admissible to establish that he had the necessary intent when he committed the instant crime.Hayes v. State, 384 So.2d 623 (Ala.Cr.App. 1979),cert. denied, 384 So.2d 627 (Ala. 1980); See alsoMcKenzie v. State, 250 Ala. 178, 33 So.2d 488 (1947);Howton v. State, 391 So.2d 147 (Ala.Cr.App. 1980); Gamble, McElroy's Alabama Evidence § 70.01 (5) (3d ed. 1977).
In addition, appellant placed in issue the identity of the assailant through his cross-examination of the victim and her brother as well as through the testimony of his witnesses. Appellant attempted to establish that the victim was mentally incompetent at the time of the commission of the instant offense and, thus, did not know who assaulted her. Further, the evidence elicited from appellant's witnesses during presentation of his case in chief attempted to establish the alibi that appellant was at home at the time of the break-in. However, the victim positively identified appellant as her assailant and her brother testified that she had been recently certified (apparently by the probate court) as being sane and competent. He further stated that at the time of the instant offense he was not serving as the victim's guardian. Thus, under the identity exception, the above challenged testimony of the victim was admissible. Hayes, supra;McElroy's, supra.
Lastly, appellant asserts that the State failed to establish a prima facie case of second degree burglary in that it did not prove the requisite intent to commit rape. *Page 1311 
The element of intent is rarely, if ever, susceptible of direct or positive proof, since it is a state or condition of the mind. It must usually be inferred from the facts testified to by witnesses and circumstances as developed by the evidence. See Cook v. State, 409 So.2d 965 (Ala.Cr.App. 1981). In order to establish the requisite intent, the intended act need not be completed or carried out. Yelton v. State,56 Ala. App. 272, 321 So.2d 234, cert. denied, 294 Ala. 745, 321 So.2d 237 (1975).
In the instant case, appellant entered the victim's home without her permission and gained access to her bedroom by breaking in a latched door. Upon entering, he ordered the victim to remain in her bed while he climbed onto it and exposed his genitalia. After remaining in the house for a period of time lasting from thirty minutes to one hour, appellant threatened to kill the victim and her brothers.
Upon a complete review of the State's evidence, we find it sufficient to have established the requisite intent to commit rape. Thus, the trial court properly overruled appellant's motion for judgment of acquittal and submitted the case to the jury for its consideration.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.