On Application for Rehearing
The opinion released on August 31, 2007, is withdrawn and the following opinion is substituted therefor. *Page 645 
The appellant, Thurman Alexander, was convicted of trafficking in marijuana, a violation of § 13A-12-2310), Ala. Code 1975. The trial court sentenced him, as a habitual offender, to serve a term of fifteen years in prison. See
§ 13A-5-9(a)(3), Ala. Code 1975. The appellant filed a "Defendant's Post Verdict Motion for Judgment of Acquittal or in the Alternative Motion for New Trial," which the trial court denied after conducting a hearing. This appeal followed.
The State presented evidence that, on July 24, 2002, law enforcement officers found marijuana growing in three separate patches in a wooded area near the trailer where the appellant lived; that, approximately twenty-five yards from the trailer, there was an opening to a path that led to the marijuana patches; that the opening to the path was obscured by bushes; that, other than that path, there were not any clearings or openings that led to the marijuana patches; and that there was not any other path or access to the first patch of marijuana. The State also presented evidence that law enforcement officers told the appellant what they had found and asked him if he wanted to see the marijuana plants; that the appellant said that he did and then walked directly to the opening where the path began; and that, at that time, the officers had not told the appellant where the path was located. When the appellant got to the opening, he stopped, put his head down, and told officers that he did not know about the path, that no one could have gone in and out of that path without his or his mother's knowledge, and that no one had gone in and out of that path. Additionally, in and around an old house that was located next to the appellant's trailer, law enforcement officers found containers and fertilizer that looked similar to containers and fertilizer officers found in the marijuana patches. Finally, in his statements to law enforcement officers and at trial, the appellant denied knowing that the marijuana was growing in the wooded area.
The appellant argues that the trial court erroneously allowed the State to present testimony regarding a collateral bad act. Specifically, he contends that the trial court should not have allowed the State to present evidence during its rebuttal case that he had smoked marijuana at some point during 2004. During its case-in-chief, the State called John Kimbrell, an investigator with the Tuscaloosa County Sheriff's Department who was assigned to the West Alabama Narcotics Task Force in July 2002. During the State's redirect examination of Kimbrell, the following occurred:
 "[PROSECUTOR:] I asked you yesterday about conversations you had with Mr. Alexander about that trail, other people accessing the trail, and his knowledge of it. Did you also talk with Mr. Alexander about marijuana?
 "[KIMBRELL:] Yes, ma'am.
 "[PROSECUTOR:] And what, if anything, did he tell you about marijuana?
 "[KIMBRELL:] He said that he smoked marijuana."
(R. 170-71.) During defense counsel's recross-examination of Kimbrell, the following occurred:
 "[DEFENSE COUNSEL:] Are you saying that Mr. Alexander made a comment about smoking marijuana to you rather than Officer Brzezinski?
 "[KIMBRELL:] Yes, sir, he did.
 "[DEFENSE COUNSEL:] And his statement was he had or he did? He didn't say `I use marijuana,' did he?
 "[KIMBRELL:] He said: `I smoked marijuana.'
 "[DEFENSE COUNSEL:] Past tense? *Page 646 
 "[KIMBRELL:] Yes, sir, that's correct"
(R. 174.)
The appellant testified that Brzezinski asked him if he smoked marijuana. Afterward, the following occurred:
 "[DEFENSE COUNSEL:] What did you say when he asked you if you smoked marijuana?
 "[THE APPELLANT:] I told him I didn't and then I thought and I said or do you mean have I ever smoked marijuana, and he said yeah, have you ever smoked marijuana. I said, yeah, I have but it's been twenty years ago and it wasn't a regular thing then. I had smoked it though.
 "So I noticed in the report later he put down that I said I had — that I did smoke marijuana, not that I had in the past.
 "[DEFENSE COUNSEL:] Did you ever see that statement, the one that Joe Brzezinski was writing out?
 "[THE APPELLANT:] I saw him while he was writing it down, but I wasn't paying attention to what he was putting down.
 "[DEFENSE COUNSEL:] Did he ever show it to you?
 "[THE APPELLANT:] No.
 "[DEFENSE COUNSEL:] And ask you to review it and sign it and say is this correct?
 "[THE APPELLANT:] No."
(E. 319.). The appellant also testified that Kimbrell did not take a statement from him.
During the State's cross-examination of the appellant, the following occurred:
 "[PROSECUTOR:] All right. And it's your testimony that you never told Investigator Kimbrell that you smoked marijuana; is that correct?
 "[THE APPELLANT:] I told him — He made it sound like I presently smoke marijuana. And, no, he is not even the one that I told that I smoked marijuana. The man in the LTD is the one that asked me that question. Me and him by ourselves in the car.
 "[PROSECUTOR:] That's what I'm asking you. So it's your testimony to this jury today that you never told this gentleman that you had smoked marijuana?
 "[THE APPELLANT:] That's right.
 "[PROSECUTOR:] Okay. So if he testified to that and he wrote that in his report, he was lying?
 "[THE APPELLANT:] And he never wrote no report while he was at the house.
 ". . . .
 "[PROSECUTOR:] About the smoking of marijuana I want to be real sure that I understand. It's your testimony that you had not smoked marijuana for twenty years?
 "[THE APPELLANT:] Thereabout.
 "[PROSECUTOR:] Okay. So you had not smoked marijuana between 1982 and 2002; is that correct?
 "[THE APPELLANT:] Probably along there, yeah. I never did smoke marijuana on a regular basis. I just had it times been setting next to somebody and passed it to me.
 "[PROSECUTOR:] Okay.
 "[THE APPELLANT:] I never could get off of it.
 "[PROSECUTOE:] But in 2002 it had been twenty years since you had smoked marijuana; is that correct?
 "[THE APPELLANT:] That's what I guessed at the time."
(R. 337-38.)
Subsequently, the State called Dalton Gant as a rebuttal witness. During the *Page 647 
State's direct examination of Gant, the followed occurred:
 "[PROSECUTOR:] Do you know Thurman Alexander?
 "[GANT:] Yeah.
 "[PROSECUTOR:] How long have you known him?
 "[GANT:] Probably twenty years.
 "[PROSECUTOR:] Okay. How old are you now?
 "[GANT:] Forty-five.
 "[PROSECUTOR:] Okay. And how is it that you have come to know Mr. Alexander?
 "[GANT:] Growed up in the same part of the community around.
 "[PROSECUTOR:] All right. Have you socialized together?
 "[GANT:] Yes.
 "[PROSECUTOR:] Have you ever smoked marijuana together?
 "[GANT:] Yes.
 "[PROSECUTOR:] When was the last occasion on which you smoked marijuana with Thurman Alexander?
 "[GANT:] Early part of last year.
 "[PROSECUTOR:] Early part of last year?
 "[GANT:] (Nods head.)
 "[PROSECUTOR:] When you say last year, you are talking about 2004?
 "[GANT:] Yes.
 "[PROSECUTOR:] It would be — it would have been the early part of last year, January or February?
 "[GANT:] Probably March, April."
(R. 372-73.)
 A.
The appellant contends that Gant's testimony was not admissible to impeach his testimony. Initially, we note that Gant's testimony that he had smoked marijuana with the appellant in March 2004 or April 2004 was not inconsistent with the appellant's testimony that he had not smoked marijuana between 1982 and July 2002 or with his testimony that, in July 2002, he told Brzezinski that he had not smoked marijuana in twenty years. The State argues that "the clear inference of Gant's testimony is that during the 20 years that Alexander denied smoking marijuana, he was smoking with Gant." (State's brief at p. 11.) The fact that the prosecutor asked Gant when was the "last" time he had smoked marijuana with the appellant implied that Gant had smoked marijuana with the appellant on more than one occasion. However, nothing in Gant's testimony indicated that he had smoked marijuana with the appellant between July 1982 and July 2002. Rather, the State's assertion is based on sheer speculation. Therefore, evidence that Gant had smoked marijuana with the appellant in 2004 was not inconsistent with the appellant's testimony at trial.
Further, even if Gant's testimony was inconsistent with the appellant's testimony, Rule 608(b), Ala. R. Evid., provides:
 "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."
Therefore, evidence that Gant had smoked marijuana with the appellant in 2004 was not admissible to impeach the appellant's *Page 648 
credibility pursuant to Rule 608(b), Ala. R. Evid.
 B.
The appellant also contends that evidence that he had smoked marijuana with Gant in 2004 was not relevant to show his knowledge in this case.
 "`On the trial for the alleged commission of a particular crime, evidence of the accused's having committed another act or crime is not admissible if the only probative function of such evidence is to prove bad character and the accused's conformity therewith. This is a general exclusionary rule which prevents the introduction of prior acts or crimes for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. . . .
 "`. . . .
 "`The foregoing exclusionary rule does not work to exclude evidence of all crimes or acts, only such as are offered to show the defendant's bad character and conformity therewith on the occasion of the now-charged crime. If the defendant's commission of another crime or misdeed is relevant for some other material purpose in the case then it may be admitted.'"
C. Gamble, McElroy's Alabama Evidence, § 69.01(1) at 300-01 (5th ed. 1996) (footnotes omitted). `This rule is generally applicable whether the other crime or act was committed before or after the one for which the defendant is presently being tried.' Id. at 300.
"`[E]vidence of collateral offenses may be admissible under certain exceptions to the exclusionary rule or for "other purposes" than to prove the accused's guilt.' Williamson v.State, 629 So.2d 777, 780 (Ala.Cr.App. 1993). In Nicksv. State, 521 So.2d 1018 (Ala.Cr.App. 1987), aff'd,521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916,101 L.Ed.2d 948 (1988), this court discussed the exceptions to the general exclusionary rule:
 "`Numerous Alabama cases list the exceptions to the general exclusionary rule, or tests for relevancy, whereby evidence of collateral crimes or acts may be admitted. These exceptions include the following:
 "`"(1) Relevancy to prove physical capacity, skill, or means to commit the now-charged crime; (2) part of the res gestae or part of a continuous transaction; (3) relevancy to prove scienter or guilty knowledge; (4) relevancy to prove criminal intent; (5) relevancy to prove plan, design, scheme, or system; (6) relevancy to prove motive; (7) relevancy to prove identity; (8) relevancy to rebut special defenses; and (9) relevancy in various particular crimes."
 "`Nelson v. State, 511 So.2d 225, 233
(Ala.Cr.App. 1986). See also Twilley v. State, 472 So.2d 1130 (Ala.Cr.App. 1985); Brewer v. State, [440 So.2d 1155 (Ala.Cr.App.), cert. denied, 440 So.2d 1155 (1983)]; Mitter v. State, 405 So.2d 41 (Ala.Cr.App. 1981); Thompson v. State, 374 So.2d 377
(Ala.Cr.App. 1978), aff'd, 374 So.2d 388 (Ala. 1979); McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528 (1954); Wilkins v. State, 29 Ala.App. 349, 197 So. 75, cert. denied, 240 Ala. 52, 197 So. 81
(1940); McElroy's §§ 69.01(1)-(11); Schroeder, Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law, 35 Ala. L.Rev. 241 (1984). All of the exceptions relate to the relevancy of the evidence, which means that evidence *Page 649 
of separate and distinct crimes is admissible only when the evidence is relevant to the crime charged. Mason v. State, 259 Ala. 438, 66 So.2d 557
(1953); Noble v. State, 253 Ala. 519, 45 So.2d 857 (1950).
 "`"All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused has been guilty of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact. Evidence of other acts to be available must have some logical connection and reveal evidence of knowledge, design, plan, scheme, or conspiracy of the crime charged; or circumstantial evidence of identity of the person charged with the crime; or tends to corroborate direct evidence admitted."
 "`Underhill, Criminal Evidence § 154 (3d ed. 1923).'
 "521 So.2d at 1025-26. `"The decision whether to allow or not to allow evidence of collateral crimes or acts as part of the State's case-in-chief rests within the sound discretion of the trial judge."' Akin v. State, 698 So.2d 228, 234 (Ala.Cr.App. 1996), cert. denied, 698 So.2d 238 (Ala. 1997), quoting Blanco v. State, 515 So.2d 115, 120
(Ala.Cr.App. 1987).
"In Bradley v. State, 577 So.2d 541 (Ala.Cr.App. 1990), this court stated:
 "`We have recognized that the list of traditionally recognized exceptions is not exhaustive and fixed. See Nicks v. State, 521 So.2d [1018] at 1025
[(Ala.Cr.App. 1987), aff'd, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948
(1988)]. "It must ever be borne in mind that the state may prove the accused's commission of another crime if such other crime is relevant for any purpose other than that of showing his guilt through the medium of bad character."
 C. Gamble, McElroy's Alabama Evidence
§ 69.0[1](1) (3d ed. 1977) (quoting Mr. Justice McElroy, 2nd ed.)
 "`"In all instances, the question is whether the proposed evidence is primarily to prove the commission of another disconnected crime, or whether it is material to some issue in the case. If it is material and logically relevant to an issue in the case, whether to prove an element of the crime, or to controvert a material contention of defendant, it is not inadmissible because in making the proof the commission of an independent disconnected crime is an inseparable feature of it."
 "`Snead v. State, 243 Ala. 23, 24, 8 So.2d 269, 270 (1942). However, even though evidence of collateral crimes or acts may be relevant to an issue other than the defendant's character, it should be excluded if "it would serve comparatively little or no purpose except to arouse the passion, prejudice, or sympathy of the jury," Spellman v. State, 473 So.2d 618, 621 (Ala.Cr.App. 1985), or put another way, "unless its probative value is `substantially outweighed by its undue prejudice,'" United States v. Stubbins, *Page 650 877 F.2d 42, 43 (11th Cir.), cert. denied, 493 U.S. 940, 110 S.Ct. 340, 107 L.Ed.2d 328 (1989) (quoting United States v. Beechum, 582 F.2d 898 (5th Cir. 1978) (en banc), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)).
 "`. . . .
 "`Rather than uphold the trial court by straining to neatly fit the evidence of the three prior incidents into the narrow confines of the traditionally recognized categories, we have chosen to review the court's ruling by determining whether the evidence was "material and logically relevant" to an issue or issues in the case.'
 "577 So.2d at 547-48."
Gamble v. State, 791 So.2d 409, 439-41
(Ala.Crim.App. 2000).
Also, in Hinton v. State, 632 So.2d 1345, 1346-48
(Ala.Crim.App. 1993), this court addressed the admission of evidence about collateral bad acts in a case involving constructive possession as follows:
 "Charles Edward Hinton, the appellant, was convicted of trafficking in cocaine, was sentenced to 15 years' imprisonment, and was fined $50,000. On this direct appeal of that conviction, he raises eight issues.
 "The State's evidence established that on September 22, 1990, Officers A.W. Clark and Rodney Bigham of the Tuscaloosa Police Department were on routine patrol when they saw three people sitting in a truck that was stopped in the road. The appellant was the owner and driver of the truck. The officers pulled in behind the truck and observed one of the occupants of the truck, Charles Mack, exit the vehicle from the passenger side. Mack had nothing in his hands.
 "Mack walked to the rear of the truck and then turned around and walked back to the passenger door. At that time, both officers saw the appellant lean over to the passenger side of the truck. They could not see the appellant's hands or the hands of the passenger who was seated in the middle seat position. As the appellant leaned over, Mack reached into the truck, retrieved a small black pouch, and started to run. Officer Clark pursued Mack and saw him throw the pouch into a clump of bushes. Clark immediately recovered the pouch and found a white powder substance and $220 in cash inside the pouch. The substance was analyzed and found to contain 57.73 grams of cocaine.
 "When he was questioned at the scene, the appellant told Officer Clark that Mack had not been in the truck.
 "`. . . .
 "In this prosecution for trafficking in cocaine, the trial court properly permitted the State to introduce evidence that the appellant had previously been convicted for distributing cocaine to establish that the appellant had knowledge of the presence of cocaine and the intent to exercise dominion over it.
 "The appellant was arrested for the trafficking offense on September 22, 1990. On October 19, 1990, he was arrested for the unrelated offense of distribution of cocaine. The day before the appellant's trial on the trafficking charge, he pleaded guilty to the distribution charge. R. 117.
 "The trial court's ruling that the appellant's arrest and conviction on the distribution charge, which occurred after his arrest on the charged offense, was `relevant to the issue of knowledge and intent' in the instant prosecution, R. 108, was correct.
 "The collateral distribution offense took place twenty-seven days after and only a few blocks away from the scene of *Page 651 
the charged trafficking offense. The facts of the collateral offense reveal that the appellant was told by an undercover police officer that the officer wanted to buy cocaine. The appellant initially replied that `he didn't have but a little bit,' R. 112-13, and began to walk away. Then, however, the appellant called to another person known as `Little Anthony' and the two of them walked to a nearby Jeep Cherokee. The appellant entered the Jeep on the driver's side and Little Anthony entered the vehicle on the passenger's side. The undercover officer saw the appellant `reach over in the front seat as if he was handing something to Little Anthony.' R. 113. Little Anthony then approached the undercover officer, gave him two rocks of cocaine, and received $100.
 "`"In Alabama, the collateral offenses offered to prove intent may either precede or follow the crime charged." Schroeder, Hoffman Thigpen, Alabama Evidence, § 4-4 at 126, and cases cited at n. 94 therein.' Chisler v. State, 553 So.2d 654, 668 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 961, 110 S.Ct. 2572, 109 L.Ed.2d 753 (1990). `If an accused is charged with a crime that requires a prerequisite intent, . . . then prior or subsequent criminal acts are admissible to establish that he had the necessary intent when he committed the instant crime.' Jones v. State, 439 So.2d 1308, 1310 (Ala.Cr.App. 1983) (emphasis added). See also Rogers v. State, 630 So.2d 88 (Ala. 1992). (subsequent collateral offenses admissible, in connection with evidence of flight, to prove consciousness of guilt); McKenzie v. State, 250 Ala. 178, 33 So.2d 488, 489-90 (1947) (subsequent collateral offense admissible to prove intent); Johnson v. State, 242 Ala. 278, 5 So.2d 632, 634-35 (1941) (subsequent collateral offense admissible to prove identity), cert. denied, 316 U.S. 693, 62 S.Ct. 1299, 86 L.Ed. 1763 (1942); Hayes v. State, 384 So.2d 623, 626
(Ala.Cr.App. 1979), cert. quashed, 384 So.2d 627
(Ala. 1980) (subsequent collateral offense admissible to prove intent and identity).
 "In order to prove that the appellant was guilty of the instant offense, the State had to establish that he knew of the presence of the cocaine in the black pouch and that he intended to exercise dominion over it. Because the appellant was charged with an offense that required proof of his knowledge and intent, his subsequent criminal act was admissible to establish that he had the necessary intent for the instant offense.
 "Here, both the charged and uncharged offenses occurred in close proximity — temporally and spatially — and involved similar conduct on the appellant's part. In both instances, the appellant reached from the driver's side to the passenger side of a parked vehicle and handed cocaine to a third party. We hold that evidence of the uncharged offense had a strong bearing on the appellant's knowledge and intent in the instant prosecution and was more probative than prejudicial. Compare Ex parte Smith, 581 So.2d 531, 535-36 (Ala. 1991) (testimony regarding collateral offense had `dubious probative value' in relation to its `undue and unfair prejudice')."
Finally, Rule 403, Ala. R. Evid., provides:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Page 652 
The collateral act in this case occurred almost two years after the offense with which the appellant was charged. Therefore, unlike in Hinton, there was no temporal proximity between the collateral act and the charged offense in this case. Also, unlike in Hinton, the facts of the offense with which the appellant charged in this case and the collateral act were not similar. In this case, the appellant was charged with constructively possessing a large number of marijuana plants that were growing in a wooded area near the trailer where he lived. The collateral act evidence consisted simply of the fact that Gant had smoked marijuana with the appellant. Other than the fact that they both involved marijuana, the two incidents were not similar. Because of the remoteness of the collateral act and the dissimilarity between the two incidents, the fact that Gant smoked marijuana with the appellant in 2004 was not relevant to show that the appellant knowingly possessed the marijuana plants law enforcement officers found in July 2002. Finally, under the particular facts of this case, the danger of unfair prejudice from Gant's testimony substantially outweighed any probative value the evidence may have had. See Rule 403, Ala. R. Evid.
For the above-stated reasons, the trial court erred when it allowed the State to introduce evidence that Gant had smoked marijuana with the appellant in 2004. Accordingly, we reverse the trial court's judgment and remand this case for proceedings that are consistent with this opinion.[1]
OPINION OF AUGUST 31, 2007, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED; APPLICATION FOR REHEARING OVERRULED.
McMILLAN, SHAW, WISE, and WELCH, JJ., concur.
[1] Because of our disposition in this case, in our original opinion, we pretermitted discussion of the remaining issues the appellant raised in his brief to this court. On rehearing, for Fifth Amendment purposes, the appellant requests that we address his sufficiency argument. We have reviewed the evidence presented in this case. Suffice it to say that the State presented evidence from the jury could have reasonably concluded that the appellant knowingly possessed more than 2.2 pounds of marijuana. Accordingly, his argument is without merit.