197 So. 75

## WILKINS v. STATE.

### I Div. 354.

Court of Appeals of Alabama.
March 26, 1940.

Rehearing Denied April 30, 1940.

---

[1] Ante, p. 196.

350

Geo. A. Sossaman, of Mobile, for appellant.

Thos. S. Lawson, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

SIMPSON, Judge.

Appellant, a negro, was convicted under an indictment charging an assault with intent to rape upon a white woman in Mobile County, and was by the court given an indeterminate sentence of from eighteen to twenty years in the penitentiary. The evidence for the State tended to show that in the early part of the night, in the City of Mobile, when the prosecutrix was alone, walking toward her home, the defendant overtook her and grabbed her by the throat. There were street lights along the course the prosecutrix was taking, as well as near the place of the assault, and she had occasion to observe the defendant as he walked under one of these lights, before as well as at the time of the assault. When she screamed and struggled with him, he disengaged one hand from her throat and attempted to put it over her mouth, continuing to choke her with the other hand. During the course of the struggle and while she was screaming, he apparently became frightened over her screams, turned her loose, and ran, whereupon she fell upon the street. She then went home and made complaint to her husband and to the officers. At the time of the alleged assault, the prosecutrix was carrying a long purse under her left arm, which the defendant, apparently, made no attempt to take. In the struggle she stated that she scratched his face or chin, and, when he was arrested, there was some evidence tending to show a scratch or an abrasion on the defendant's neck and

a "pimple" of some kind on his chin. The next morning, after she had given a description of her assailant to the police, the defendant, who resembled this description, was presented to the prosecutrix for possible identification. At this time, she was cautioned by the officers, including the solicitor, to be careful and if there were doubt in her mind as to the identity of the defendant, she should so state. On this first occasion, she failed to positively identify the defendant as the assailant. When he was presented to her that morning, he was dressed differently from the person who assaulted her the night before. She described to the officers the dress of her assailant and as having had on shoes with steel plates on them, she having heard the steel plates striking the pavement when he walked. There were found at his home a shirt and trousers of the description given to the officers, and the defendant, himself, at the time of his arrest, was wearing shoes with steel plates on them. The defendant's brother-in-law, however, claimed to own the clothes. The night following, the defendant with his attorney and others, together with prosecutrix, were taken to the scene of the crime, and there some of the scene was attempted to be re-enacted. The prosecutrix contended, however, that the defendant's voice was not similar to the tone used on the night of the assault, when he had asked her the name of a street just before overtaking her. She still was reluctant to identify the defendant as the one involved. On the following night, the same procedure was undertaken, the defendant being dressed as the one who had assaulted her, and at this time, the tone of his voice being louder, she became positive that he was the person who had assaulted her, and so testified in her examination at the trial. The following morning she notified the police and the sheriff's office that she was convinced that the defendant was the man. During the progress of this identification, it was revealed (or the evidence is easily thus interpreted) that the prosecutrix was exercising great care in making this identification, responsive to the caution of the officers of the law who talked with her and investigated the case. She explained, upon her examination at the trial, that her reluctance to immediately identify the defendant was induced largely by the admonishments of the officers, aforesaid.

Over the objections and exceptions of the defendant, the State was permitted to introduce in evidence that the defendant on

prior occasions had made indecent exposures and, with his trousers open, exhibited his private parts or phallus to white girls about the ages of fourteen or fifteen years, while riding along by St. Mary's School and other places on a bicycle. At times these indecent exposures were in the presence of several young ladies and at others only in the presence of one person. There were some of these witnesses who suffered these mortifying exhibitions more than one time. These alleged occurrences were described as having taken place in February and March prior to the alleged assault on the prosecutrix in May. There were five young ladies who gave this evidence and their identification of the defendant at the trial was positive. The basis of the appellant's objection to this evidence was that it was "an attempt to prove a separate and distinct offense unconnected with the present offense, and an attempt to convict the defendant on his reputation for having committed other offenses for which he had not been convicted." After the introduction of the evidence, motion was made to exclude it on the ground that it had "developed testimony of an independent crime, which in order to rebut, this defendant would have to have witnesses to testify to facts, and that he was not prepared to defend this crime." In overruling the objection and motion of the defendant, the court limited this evidence to the question of "identity and intent," and in charging the jury, instructed it as follows: "I want to call your particular attention to this other phase, with respect to other offenses—that the testimony has been presented before you—there has been evidence presented here charging this defendant with offenses of a similar type,—exposing himself sexually before others. That testimony you will not consider in arriving at the verdict of the defendant being guilty. That is not what you are trying him for, whether or not he is guilty in that,—but the purpose of that is only to aid you in determining if this defendant is guilty—what his intent was. Did he intend to commit a rape or did he intend to rob or whatever it was. That is the only purpose of the evidence, or his identity. You may look to it for that purpose, but you must be satisfied beyond a reasonable doubt, otherwise as to the offense,—that is that the offense was committed and that this defendant committed this particular offense. You consider that evidence only for the purpose of aiding you in determining the identity or intent. You

must be satisfied before you can convict this defendant under this indictment beyond a reasonable doubt of his guilt."

It might be here mentioned that the trial of this case took place July 26th, and, prior to that time on July 19th, the defendant by his attorney presented a motion to the court to require the solicitor's office to then give the defendant notice as to whether or not he would attempt, at the trial of the case, to make proof of alleged indecent exposures by the defendant at times and places disconnected with the crime of the assault upon the prosecutrix. It thus appears that, if such testimony were otherwise admissible, the defendant was not taken by any surprise in its introduction by the State.

The defendant denied his guilt of the main charge as well as the collateral offenses and introduced evidence tending to support an alibi, to the effect that he was at home on the night of the alleged assault and also tending to show his innocence of the indecent exposures charged against him by the five female witnesses who testified for the State. The defendant was convicted, the jury returning a verdict as follows: "We, the jury, find the defendant guilty with Assault to Rape as charged in the indictment," and upon this verdict the judgment of the court, aforesaid, was rendered, sentencing the defendant.

We consider first the most important question in the case. Was the testimony of indecent exposures (and we might add that the evidence indicates them to have been most revolting) to other white women or girls, at a not very remote time prior to the offense charged, legal and admissible? Or should the State have been denied the right to prove such collateral offenses or conduct as bearing upon the identity of the accused or the crime or upon the intent with which the offense was perpetrated by the accused? It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes or offenses at other times, even though of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged unless the other offenses are connected with the offense for which he is on trial. In other words, proof of such collateral offenses cannot be used as *substantive evidence* to establish the guilt of the accused as to the crime charged. 20 Am.Jur., Section 309,

pp. 287, 288. Wharton's Criminal Evidence, 10th Ed., Volume 1, Section 30, p. 59. This well-established principle of criminal evidence, however, is subject to several, equally well-established exceptions, which include cases where intent or identity is involved. As found in 22 R.C.L., Section 39, p. 1204: "But this general rule is not to be followed blindly and evidence rejected on the sole ground that it does show the commission of another crime. If evidence is relevant and competent it should be admitted regardless of its incidental effect. Accordingly it is held that evidence of another crime is admissible where it tends to identify the accused."

And we also add that such evidence should also be admitted where it tends to show the intent with which the act was done. Or as stated in Underhill's Criminal Evidence, 4th Ed., Section 181, p. 318: "To this general rule there are several distinct exceptions which have been permitted *from absolute necessity, to aid in the detection and punishment of crime.* These exceptions ought to be carefully limited and guarded by the courts and their number should not be increased. But it must be admitted that the *modern* tendency on the part of the courts is to *be liberal* in the admission of evidence of collateral crimes. The exceptions to the general rule arise either from the necessity of the case or the nature of the offense, as for example, * * when the *intent* or motive is to be proved from the circumstances, or where the *identity* of the accused is expressly in issue." (Italics supplied.)

All of the exceptions to the general rule are listed in Wharton's Criminal Evidence, supra, Section 31, p. 60, as follows: "These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) *Relevancy to prove identity of person or of crime.* (3) Relevancy to prove scienter, or guilty knowledge. (4) *Relevancy to prove intent.* (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws." (Italics supplied.)

Following the modern tendency to be liberal in the admission of such evidence, and perhaps in order to clarify the law on the subject, there was included in the 1927 Michigan Code of Criminal Procedure a general provision covering the foregoing principles and making them applicable in all criminal cases, wherein it is provided: "In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant." Mich. Pub.Laws 1927, No. 175, c. VIII, Section 27, now Comp.L.1929, Section 17320.

Other states have thereafter enacted similar statutes. There are many Alabama cases affirming the general doctrine here announced, notably among them being Yarborough v. State, 41 Ala. 405; Ross v. State, 62 Ala. 224; Curtis v. State, 78 Ala. 12; Stanley v. State, 88 Ala. 154, 7 So. 273; Gardner v. State, 17 Ala.App. 589, 87 So. 885, certiorari denied 205 Ala. 60, 87 So. 888; Miller v. State, 130 Ala. 1, 30 So. 379; Gassenheimer v. State, 52 Ala. 313; Dennison v. State, 17 Ala.App. 674, 88 So. 211; Vincent v. State, 231 Ala. 657, 165 So. 844; 6 Alabama Digest, Criminal Law, ☞ 371(1); 6 Alabama Digest, Criminal Law, ☞369(15).

The general rule, therefore, with the noted exceptions, is of course familiar to all learned practitioners of the law. The application of the rule, with its exceptions, has been the difficult problem upon which courts have differed one with the other and sometimes among themselves. We have been unable to find an Alabama case exactly similar to the one at bar and this court, realizing the import of this decision, has considered the record of the evidence en banc and its members accord, unanimously, with the views herein expressed as well as the principles of law sought to be reiterated. If the testimony of the young white women as to the previous indecent

exposures or indecent conduct of this appellant does not tend to evidence the intent of the defendant at the time of the act involved, or to identify him as the person who committed the crime charged in the indictment, it was manifestly incompetent and highly prejudicial. It seems, however, to this court that such evidence does, profoundly, tend to shed light upon the intention of the defendant at the time he assaulted the prosecuting witness as well as aid in his identification.

In discussing the relevancy of collateral offenses as bearing upon intent, Wigmore on Evidence, 2d Edition, Section 357, p. 664, has this to say: "The *Intent* principle (ante, Section 302) clearly applies where the act is assumed as otherwise proved and the intent is in issue; i. e. in such cases, former acts of the kind are relevant to negative the intent as being of any other kind than to commit rape. (a) Where the charge is of *assault with intent,* the propriety of such evidence cannot be doubted. There should be some limitation of time, but merely to avoid the objection of unfair surprise (ante, Section 194). There need be *no limitation* as to the *person assaulted,* because the only purpose is to negative any other than the rape-intent, and a previous rape-assault *on another woman* has equal probative value for that purpose, *for it is the general desire to satisfy lust that is involved in this crime,* and *no particular woman* is essential for this. Accordingly, where the charge is assault with intent, former acts of the sort should be received without any limitation except as to time." (Last italics ours.)

Nothing more need be said, if Wigmore is to be deemed an authority on the question, and we regard him as pre-eminent. If, as stated by this eminent authority, *"where the charge is assault with intent* (to rape), the propriety of such evidence *cannot be doubted"* and if, as also stated by him, such evidence has "probative value" for the purpose of showing "the general desire to *satisfy lust* that is involved in this crime" and "no particular woman is essential for this," the only conclusion to which reason and logic bring us, is that the evidence of the collateral offenses in the present case, so closely connected in point of time, place, and race with the offense charged, was admissible. Let us consider the facts in the light of the authorities above cited. When the defendant assaulted the prosecuting witness on the night

charged, what was his intention? Was it to *rob,* to *rape,* or to do her *other* physical harm? Without the aid of the testimony of his previous conduct with other white women no one could say and it would have to be left to guess or doubtful inference by the jury as to what that intention was. Whereas, with the proof of his conduct sexually, toward other white females before this assault charged, it is but a reasonable conclusion that his acts at that time were with the *intent* or *"desire to satisfy lust."* Or, as said by Mr. Wigmore, such testimony had great *"probative value" for the purpose of showing the defendant's "general desire to satisfy lust."* His previous misconduct, sexually, had been directed toward a particular class, i. e., white females; so on this night when he accosted the prosecutrix, as here detailed, it is logical to say, with the evidence of his previous conduct, that, again, his intent was to gratify himself sexually, and this court is of the opinion that the evidence was rightly admitted by the court for this purpose. Any other view, it seems to us, would be illogical. A quotation from Wigmore which summarizes the subject and would commend these conclusions might be apt here: "Some judges incline to treat the judicial test of probative value as identical with the common-sense test, and to admit such instances as bear a similarity liberally interpreted by the standard of every-day reasoning. Other judges set their faces firmly against every instance which is not on all fours with the offense in issue, regardless of the consideration that justice consists quite as much in *protecting the public against evil doers as in showing mercy to those whose guilt has been more or less skilfully concealed.* It is hopeless to attempt to reconcile the precedents under the various heads; for too much depends on the tendency of the Court in dealing with a flexible principle. One Court will be certain to exclude everything that is not too clearly probative for even technical quibblers to oppose, and sometimes will exclude even that. Another Court will accept whatever has real probative value. Something, however, may perhaps be gained by realizing, as to the former, that it is not the law, nor precedent, nor principle, nor policy, that will account for such rulings, but merely a rooted inclination to take the stricter view and a preference to err in favor of criminals and against innocent victims." (Italics ours.) Wigmore on Evidence, 2d Edition, Vol. 1, Section 302, pp. 615, 616.

This court rests its conclusions upon this eminent authority, in the satisfaction that these considerations have in mind the public interest and that "justice consists quite as much in protecting the public against evil doers as in showing mercy to those whose guilt has been more or less skilfully concealed." We would rather entertain the "liberal interpretation" than be subject to the vice of the concluding part of the quoted statement. Other text writers have dealt similarly with the subject. Wharton, supra, Sections 30, 31, 36, 37, 42; Wigmore, 2d Edition and Supplement, Sections 303 to 306; Underhill's Criminal Evidence, 4th Edition, pp. 310 to 345; Greenleaf on Evidence, Vol. 3, pp. 21 and 22, Section 15; Roscoe's Criminal Evidence, 8th Edition, Section 94, p. 140. Jones, in the first volume of his excellent work, Commentaries on Evidence, deals with this subject of the relevancy of other crimes. Beginning with Section 143, where he quotes Bishop on Criminal Procedure as to the general doctrine, he continues: "It is that, though the prisoner is not to be prejudiced in the eyes of the jury by the needless admission of testimony tending to prove another crime, yet whenever the evidence which tends to prove the other crime tends also to prove this one, not merely by showing the prisoner to be a bad man, but by showing the particular bad intent to have existed in his mind at the time when he did the act complained of, it is admissible, and it is also admissible if it really tends thus, as in the facts of most cases it does not, to prove the act itself."

This doctrine has been liberally applied by substantially all the courts whenever there has been fraudulent intent in connection with property, such as uttering counterfeit money, receiving stolen property, obtaining property by false pretense, embezzlement, blackmail, malicious injury to animals and the like. Alabama cases and Digest, cited supra. Brown v. State, 15 Ala. App. 180, 181, 72 So. 757, certiorari denied 198 Ala. 689, 73 So. 999; McDonald v. State, 83 Ala. 46, 3 So. 305. Note 62 L.R. A., pages 214 et seq.

The courts are practically uniform in admitting evidence of this character as between the defendant and other persons not too remote, as tending to show the system, means, or method of operation having common characteristics, and all pointing to the guilt of the defendant. Appropriate to the general doctrine, Jones observes in Vol. 1, Section 144: "A man who has formed the plan of attempting (attacking) the chastity of women, and carried it into effect by a series of crimes, can be and should be no more protected than the one who has planned to financially victimize the inhabitants of a locality."

If other similar offenses are competent, as the authorities generally hold, to show a fraudulent intent in the wrongful taking of property why should not other offenses be equally competent to show the degenerate intent in the wrongful and violent taking of virtue and perhaps the lives of women and girls? To endeavor to draw a distinction would be one without a difference except that the public welfare and public virtue should have, at least, equal protection to private property. As Lord Coke said in the days gone, "Reason is the life of the law; nay the common law itself is nothing else but reason. * * * The law, which is the perfection of reason." If the evidence in this case is to be believed, and the judge, who was, under the law, the impartial arbiter of the case, must have been singularly impressed with its verity, as disclosed by the maximum (or nearly so) sentence under the law given him, this defendant was of a lecherous, lascivious, degenerate disposition, habitually conducting himself sexually toward white females. Logically, therefore, as well as morally and righteously, this prior conduct bore directly on what his intent might be when he assaulted the prosecuting witness and the jury was legally entitled to consider it in this connection when making up its verdict. Leading cases analogous to this reasoning are Barnett v. State of Ohio, 104 Ohio St. 298, 135 N.E. 647, 27 A.L.R. 351 et seq.; State of Kansas v. Rufus King, 111 Kan. 140, 206 P. 883, 22 A.L.R. 1006 et seq; State v. Gummer, 51 N.D. 445, 200 N.W. 20.

The objection of appellant's counsel that even though such collateral offense be admissible as bearing upon the intent or identity of the accused, certain of the indecent exposures were not crimes, in that on one or two occasions the defendant's sexual expositions were in the presence of only one female, whereas the crime requires that the indecent exhibitions be in the presence of two or more persons. For such evidence to be admissible, it is unnecessary that the act be a crime. If the evidence is otherwise relevant as bearing upon the intent it is admissible. Underhill, supra, Section 183; Wigmore, supra,

Section 305. The same is true with reference to the time of the commission of previous (relevant) acts. Remoteness of time alone does not render them inadmissible. Pope v. State, 10 Ala.App. 91, 64 So. 526; Greenleaf, 16th Edition, p. 22; Dietz v. State, 149 Wis. 462, 136 N.W. 166, Ann.Cas. 1913C, 732; State v. Gummer, 51 N.D. 445, 200 N.W. 20.

Although the principles involved here are not new, the application of cases under them has always been difficult. Not only for this reason, therefore, has it been necessary to thus elaborate, but also out of deference to the learned argument of the distinguished counsel who so ably represented the defendant in the case, do we think it proper.

■ The insistence of appellant that the jury's verdict is insufficient to support the judgment rendered and sentence imposed is untenable. The defendant was indicted and tried under Section 3303, Code 1923, and under this indictment there were only three verdicts of guilt which could have been rendered, i. e. (1) an attempt to commit the offense charged in the indictment, or, as the court charged the jury, "an attempt to commit an assault to rape." Code of 1923, Section 3307; Burton v. State, 8 Ala.App. 295, 62 So. 394. (2) Simple assault or assault and battery. Payne v. State, 148 Ala. 609, 42 So. 988; Millender v. State, 147 Ala. 688, 40 So. 664. (3) Assault with intent to rape or as charged by the court, "This indictment charges this defendant— not with a rape, but an assault to commit a rape—the intent to rape." The oral charge of the court was explicit as to the three separate verdicts which could be returned and it is plain to us that the verdict rendered was responsive to the court's charge as to what constituted assault with intent to rape.

Furthermore, had either of the other forms of verdict been intended by the jury, i. e., "attempt" or "assault and battery," the jury should have also imposed a fine, which was not done. Manifestly, under the charge of the court and the law applicable, the verdict was sufficient to support the judgment.

We deem it unnecessary to deal with the remaining insistences of appellant, other objections and exceptions taken at the trial appearing unimportant, and the judgment is affirmed.

Affirmed.