202 So.2d 556

**Leon LANG**

**v.**

**STATE.**

**8 Div. 108.**

Court of Appeals of Alabama.

Aug. 29, 1967.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted at the special October, 1966, session of the Grand Jury of Marshall County, Alabama, and charged with the following offense: "* * * while serving a sentence of thirty years in the State penitentiary for robbery, said sentence emanating from the Circuit Court of Marshall County, Alabama, on the 17th day of February, 1965, and while said sentence had not expired, and while the defendant was being temporarily held in the County Jail of Marshall County, Alabama, under the authority of law and in the custody of L. P. Dickson, as Sheriff of Marshall County, Alabama, and while the defendant was awaiting a hearing on a petition for a Writ of Error Coram Nobis in the Circuit Court of Marshall County, Alabama, the defendant escaped from L. P. Dickson, as Sheriff of Marshall County, Alabama, the person having him in charge and under authority of law, contrary to law and against the peace and dignity of the State of Alabama".

Stone & Grass, Guntersville, for appellant.

Appellant was arraigned on January 10, 1967, at which time he pled not guilty and his trial was set for February 20, 1967, at which time he demurred to the indictment and also filed a motion for continuance charging that he could not receive a fair and impartial trial dressed in prison clothes. The demurrer and the motion for continuance were overruled. Appellant's demurrer to the indictment reads as follows:

"Defendant most respectfully demurs to the indictment in this case upon the grounds that he has already been punished for the offense charged in the indictment by the Alabama Board of Corrections when it forfeited 9 months and 18 days statutory good time of defendant on October 21, 1966 for the same offense.

"The disciplinary action by the Alabama Board of Corrections in which it forfeited 9 months and 18 days of defendant's statutory good time as punishment for the crime of escape charged in this indictment in effect was equivalent to sentencing defendant in the penitentiary for a period of 1 year and 1 day. Nine months and eighteen days will serve a one year and one day sentence when good time credits are deducted from the sentence.

"Defendant respectfully submits that he has once been placed in jeopardy by the punitive action of the Board of Corrections; and this Honorable Court, therefore, has no jurisdiction to cause defendant to be placed in jeopardy again for the same crime.

"Amendment 5 of the United States and Article 1, Section 9 of the Constitution provides that no person shall be subject for the same offense to be twice placed in jeopardy of life and limb.

"For the foregoing reasons, defendant moves this Honorable Court to quash the indictment and dismiss the case."

The court's ruling on this demurrer was as follows:

"On this day in open court the defendant's demurrers this day filed in this case coming on to be heard and being argued by counsel and understood by the Court, it is therefore considered, ordered and adjudged by the Court that defendants demurrer this day filed in this case be and is hereby overruled, the defendant having already entered a plea of not guilty."

Appellant was tried by a jury on February 20, 1967, and found guilty as charged and sentenced to a term of five years in the penitentiary therefor. His motion for a new trial was overruled. Hence, this appeal.

The State's first witness, Circuit Clerk James L. Albert, testified that he knew appellant and knew about his conviction and sentence and that he had the records on his conviction on a robbery charge.

Sheriff L. P. Dickson of Marshall County testified that in October of 1966 he had appellant in custody and he did escape.

Mr. Troy Hughes, the jailer, testified that it was his duty to lock prisoners up and let them out and that about the month of October, 1966, he saw appellant in prison; that on October 16, 1966, when he went up to open the door, appellant and two other prisoners grabbed him and dragged him into the cell where they locked him up and where he stayed for the next two hours. He said that none of the three said anything to him, that they drew no weapons, nor did he see any weapons in their hands. On cross-examination, Mr. Hughes said that a prisoner by the name of Lovell grabbed him first and then the other two came up and also grabbed him. He said that he had opened the cell to put some groceries in and to get a prisoner out. Mr. Hughes testified that the glass was broken out of one of the doors in the court house on the second floor; that the court house was closed and the doors locked because it was on a Sunday; and that he did not know how the glass was broken.

Deputy Sheriff Rex Drain testified that he saw appellant on the date in question

under the "old Ogle Electric Building right behind Hammer's"; that this building was one block from the court house; that under the building with appellant were two other men and that it was about 8:00 A.M., which was some 30 to 40 minutes after they began searching for the escaped prisoners. The witness stated that he had a shotgun when he saw the prisoners lying on their backs; that he ordered them to come out and that they did so and that he then took them back to jail. He also stated that there were two doors broken out in the court house, one on the front and the other on the second or third floor and, on cross, stated that he did not know who broke them. The witness stated that there were only two ways to enter the jail, one, down the elevator, and the other, through the door that had the broken glass.

Sheriff L. P. Dickson testified that appellant was back from Kilby Prison and in the Marshall County jail about October 16 of "last year" trying to get a new trial and that he had received appellant from prison authorities and put him in jail to await his hearing. He stated that he did not see appellant escape.

Jailer Troy Hughes was recalled and testified that he received a "puff-knot and a little hit on the head" in the scuffle but that he did not know which prisoner was responsible.

Leonard J. Harris testified that he was in jail with appellant in October, 1966, and in the same cell and that a Mr. Lovell was also in the cell. He said that he saw Mr. Hughes several times during that day; that on the 16th of October Mr. Hughes came and opened the cell and that he had a package for appellant; that Lovell grabbed the jailer and appellant was shoved aside because he was in the way. The witness testified that he and Lovell had planned to escape but did not tell appellant, that at no time did appellant grab Mr. Hughes in their presence; that he did not know where appellant was when he and Lovell started running down the steps and that he (the witness) broke the first door and he thought both he and Lovell broke out the second door. He said that appellant did not break either door but followed them about a block where they all got under the building where they were found.

Wallace K. Otwell, another fellow prisoner, testified that he was in the same cell with appellant and Harris on October 16; that when the jailer opened the cell door he saw Lovell grab him; that he (the witness) became nervous and moved to the back of the cell; that Harris grabbed the jailer next; and that appellant was the third one to come towards the door.

James A. Hill, another prisoner, testified also that Lovell grabbed the jailer, then Harris, but that he did not see appellant ever grab him. Billy Joe Anthony and Kenneth Garner, fellow prisoners, testified similarly.

■ Appellant's motion for continuance has no merit. The question of the dress of appellant, viz., prison garb, is inapplicable in view of the minute entry by the court, which reads in part as follows:

"The defendant having this day made a Motion for Continuance in this cause and the same being understood by the Court, it is therefore considered, ordered and adjudged by the Court that the defendant's Motion for Continuance be and is hereby overruled. This Court has not required defendant to go to trial dressed in prison garb, and has twice, on this date, informed defendant's counsel that defendant could dress in civilian clothes. Defendant's counsel, therefore, obtained civilian clothes for the defendant and the defendant dressed in same throughout the trial of this case."

Appellant contends that reversible error was committed in allowing evidence of conviction of appellant for robbery to be mentioned.

■ We hold that it was necessary in order to prove escape for the indictment to

specify that appellant was serving a sentence for robbery and that he was awaiting a hearing on coram nobis. The State carried the burden of proving these as well as other allegations contained in the indictment.

The use of evidence of prior offenses, though generally inadmissible, has several exceptions. The case of McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528, aptly deals with these points as follows:

"* * * These exceptions are set out in Wharton's Criminal Evidence, Sec. 31, as follows:

'Those exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws.'

"Several of these exceptions have been dealt with in the opinions of this court and of the Supreme Court. We will not attempt a review of these decisions, but refer any interested party to the following citations: Wilkins v. State, 29 Ala.App. 349, 197 So. 75, certiorari denied 240 Ala. 52, 197 So. 81; Lee v. State, 31 Ala.App. 91, 13 So.2d 583, certiorari denied 244 Ala. 401, 13 So.2d 590; Brown v. State, 32 Ala.App. 131, 22 So.2d 445; Lee v. State, 246 Ala. 69, 18 So.2d 706; Daniels v. State, 243 Ala. 675, 11 So.2d 756; Robinson v. State, 243 Ala. 684, 11 So.2d

732; Johnson v. State, 242 Ala. 278, 5 So. 2d 632; Jackson v. State, 229 Ala. 48, 155 So. 581; Brasher v. State, 249 Ala. 96, 30 So.2d 31."

In Wilkins v. State, 29 Ala.App. 349, 197 So. 75, the court stated particularly as follows:

"* * * It is a well-established common-law rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of the commission of other crimes or offenses at other times, even though of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged unless the other offenses are connected with the offense for which he is on trial. In other words, proof of such collateral offenses cannot be used as *substantive evidence* to establish the guilt of the accused as to the crime charged. 20 Am.Jur., Section 309, pp. 287, 288. Wharton's Criminal Evidence, 10th Ed., Volume 1, Section 30, p. 59. * * *

"This well-established principle of criminal evidence, however, is subject to several, equally well-established exceptions, which include cases where intent or identity is involved, as found in 22 R.C.L., Section 39, p. 1204: 'But this general rule is not to be followed blindly and evidence rejected on the sole ground that it does show the commission of another crime. If evidence is relevant and competent it should be admitted regardless of its incidental effect. Accordingly it is held that *evidence of another crime is admissible where it tends to identify the accused.*'" (Emphasis ours.)

"If the accused's commission of a criminal act not charged in the indictment or complaint on which he is now being tried is admissible as tending to prove his guilt * * * the better considered decisions (which constitute the weight of authority) hold that a judgment convicting the accused of such other criminal act is provable." 2 McElroy,

Law of Evidence in Alabama, 2d Ed., Sec. 269.09.

"In order to constitute the offense of escape, it is necessary that the defendant first be in custody for some criminal act." 3 Anderson, Wharton's Criminal Law and Procedure, Sec. 1373.

"One of the essential elements constituting the crime of escape is that the prisoner was in the lawful custody of the officer, and this must appear from the allegations of the indictment. It is, however, sufficient to meet this requirement by general averments in the language of the statute that the prisoner was in the lawful custody of the officer." Houpt v. State, 100 Ark. 409, 140 S.W. 294.

" * * * If there is no former sentence, then there is no time fixed for the beginning of the term of sentence for jail-breaking. We cannot conceive that the Legislature intended to make jail-breaking a felony, by one who was not actually guilty of a previous felony. If it intended to make escape from jail by violence and force a felony, regardless of the prisoner's guilt or innocence of the crime for which he was then in custody, there is no reason for making the escape in one instance a felony and in the other a misdemeanor. This construction of the statute is necessary to make it harmonize with the following section, which makes it a misdemeanor for any person lawfully imprisoned in jail, 'and not sentenced on conviction of a criminal offense,' to escape therefrom by force and violence. The term 'sentence' means the final judgment or determination by the court in a criminal proceeding. 7 Words and Phrases, 6411. This section, therefore, embraces persons who have been tried and found guilty by a jury, either of a misdemeanor or a felony, and on whom judgment of court has not been pronounced, which is the character of the case now before us. * * *

"To constitute escape from prison a crime, in any event, it is essential that the prisoner be lawfully in custody. 11 A. & E. E. L. (2d Ed.) 304; 16 Cyc. 540; 1 Russell on Crimes (7th Eng. Ed.) 566." State v. Pishner, 73 W.Va. 744, 81 S.E. 1046, 52 L.R.A.,N.S., 369.

The judgment in this cause is, therefore, due to be and the same is hereby

Affirmed.