293 So.2d 327

**Wilburn Lawrence HENRY, alias**

v.

**STATE.**

**6 Div. 606.**

Court of Criminal Appeals of Alabama.

April 9, 1974.

Ralph L. Armstrong, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and William T. Musgrove, Jr., Special Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of robbery and his punishment fixed at fifty years impris-

onment in the penitentiary. His retained counsel appeared with him at arraignment and interposed a plea of not guilty. After trial appellant was adjudged to be indigent and the court ordered a free transcript for him and appointed new counsel to represent him on appeal.

Around 2:00 P. M. on the afternoon of July 3, 1972, two black men robbed the store manager of a supermarket store located at 1965 Bessemer Road, Central Park, Birmingham, Alabama. Four eyewitnesses identified appellant as one of the robbers.

The store manager testified that appellant stuck a pistol in his side and told him, "This is a robbery. If you say anything, or holler, I will blow your brains out. Lets get into the office." From a desk drawer in the office the manager took an undetermined amount of money and put it in a cloth bank bag. Appellant still had a pistol in the side of the manager and told him to go to the safe. The safe was outside the office and the money in the safe was put in the same bank bag. Appellant then told him to get the money out of the cash registers and to put it in the bag. There were six registers but only two were in operation at this time. The manager got the money from the two registers in operation and three others and told appellant there was no money in the fourth register. Appellant took possession of the money bag and told the manager to walk with him to the door. When they got to the door, appellant told him to tell everyone that if they tried to follow him he would kill them and walked out the exit door of the store.

When appellant carried the manager inside the office, appellant's companion stood immediately outside the door and kept a pistol pointed on three or four part-time employees. He kept them at bay until the manager got the money from the last cash register and he left the store in front of appellant. The assistant manager of the store called the police and reported the robbery.

When the officers arrived, the manager gave them a description of appellant. He told the officers that appellant was wearing a striped shirt and dark pants and had a fairly heavy mustache. The manager was shown numerous photographs on three separate occasions but was unable to identify either of the two men who robbed the store. Over a month later appellant was arrested and a lineup was conducted and the manager positively identified appellant as one of the men who robbed the store on the afternoon of July 3, 1972. The manager also made an in-court positive identification of appellant.

A male employee who was operating one of the cash registers testified that he observed the two black men while the robbery was in progress. He described one as being short or stocky and he further stated that he was wearing a hard hat and a long-sleeve sweater and the other man was taller and had a mustache and was wearing a long-sleeve printed type shirt and dark pants. The man wearing the hard hat pointed a pistol directly at him while he was checking out a customer; that he got a good look at the man who held a pistol on the store manager at the time the manager came to his cash register and told him to step back and the manager took all the money from his register, except some change, and put it in the bank bag. He saw both men walk out the store.

The detectives in charge of this robbery investigation brought some photographs to the store on two or more occasions and this employee identified both robbers from these photographs. These identifications were made prior to the line-up.

Another employee of the store at the time of the robbery made an in-court positive identification of appellant and also picked him out in a police conducted lineup. He, too, was shown a series of photographs but was unable to identify either of the robbers.

A fourth employee of the store present at the robbery scene identified appellant as

one of the robbers from a number of photographs and made a positive in-court identification. As the robbers were leaving the store he went to the rear of the store and opened a door leading to the back parking lot. While standing in the opened door, he saw a late model "gloss" black, Electra 225, Buick automobile with two men on the front seat pull around the corner of the store and speed away. He was unable to say whether appellant was in this car as he did not have time to get a good look at the occupants before the car left the parking lot.

A woman from Atlanta, Georgia, was visiting her relatives in Birmingham during the July 4th holidays in 1972. She drove her sister and mother to the supermarket where the robbery occurred on July 3rd and parked in a parking space near the end of the store building. Her sister went in the store to shop and she stayed in her car with her children and her mother. She had been parked between five and ten minutes when she observed two black men come from the direction of the entrance to the store. One was a few steps in front of the other one and both were walking fast. She saw the one in front beckon the other to "hurry". She first observed them when they were about two car lengths from her car. When they got about in front of her car, they started to run. She saw them enter a late model black Buick automobile. The rear end of this Buick was slanted in her direction and she wrote down the license tag number for the reason that the actions and conduct of the two black men aroused her suspicions. The tag number was 1A–30275. She went in the supermarket and gave the tag number to the store manager or assistant store manager after the Buick sped away.

On August 5, 1972, around 3:40 P.M., one month and two days after the robbery for which appellant stands convicted, two police officers of the City of Birmingham were patrolling in a well-marked police car—blue light on top, regular markings, insignias, etc.—at Third Avenue and Twelfth

Street, West, when they received a radio dispatch to answer a call in the 1100 block of Tuscaloosa Avenue. They turned off Twelfth Street into an alley by Tuscaloosa Avenue where a dentist's office was located. There were seven or eight parking spaces in front of this office building. They observed only one car parked at the building and it was a solid black 1969 or 1970 model Buick automobile, Electra 225. The officers saw two black men with pistols in their hands running toward the Buick automobile. When they were within twenty-five or thirty feet of this automobile they noticed the police car and they turned and ran in the opposite direction. Two other police officers arrived at the scene and started looking for the two men who ran when they saw the police car. About one-half block from the Buick automobile they saw a black man running toward Tuscaloosa Avenue in the direction away from the Buick automobile parked at the dentist's office building. The officers placed him under arrest and learned his identity. He was the appellant in this case.

The officers checked the license tag registration on the Buick automobile and found the number to be 1A–30275, 1972 Alabama tag, the identical number that the woman from Atlanta, Georgia, wrote on a piece of paper on July 3, 1972, while she was parked at the supermarket that was robbed by two black men on that date.

Appellant strenuously objected to all the testimony pertaining to the transaction involving the August 5, 1972, incident and the circumstances surrounding his arrest and particularly the attempt on the part of the state to connect the Buick automobile with the robbery of the supermarket on July 3, 1972. Appellant complained of the remoteness in the time frame between the two occurrences and further that the state was attempting to show the commission of a separate and distinct crime to the great hurt and prejudice of appellant. The distinguished trial judge was cautious in restricting this testimony to *the identity of*

*the accused* and studiously prevented the State from showing appellant was arrested for another crime.

Tag number 1A–30275, Alabama 1972, was ascertained to be stolen and it was placed over another 1972 tag on the Buick automobile.

At the conclusion of the state's case, there was no motion to exclude the evidence. There was no request for the affirmative charge and no motion for a new trial. No exceptions were reserved to the court's oral charge.

Appellant did not offer any evidence in his behalf.

On this appeal, appellant urges a reversal on two grounds, (1) he was not attended by counsel at the time of sentencing, and (2) the court erred in allowing the state to prove separate, distinct and independent offenses in the trial of his robbery conviction.

The judgment entry recites, in part, the following:

"This the 3rd day of May, 1973, came Earl C. Morgan, District Attorney, who prosecutes for the State of Alabama, and also came the defendant in his own proper person and by attorney, and thereupon came a jury of good and lawful persons, to-wit: Frederick D. Templin and eleven others, who being duly empaneled and sworn according to Law, before whom the trial of this cause was entered upon and continued from day to day and time to time, said defendant being in open Court at each and every stage and during all the proceedings in this cause, and the defendant and his counsel, Larry Sheffield, and the prosecuting attorney, Roger Brown, consenting thereto in open Court, it is ordered by the Court that the jury trying this case be and they are hereby permitted to separate during the pendency of this trial, and the defendant enters his plea of not guilty. This the 4th day of May, 1973, said jurors upon

their oaths do say 'We the jury find the defendant guilty of robbery as charged in the indictment and fix his punishment at 50 years imprisonment in the penitentiary'. The Court polled the jury by asking each juror individually 'Is this your verdict?' and each juror replied in the affirmative.

"This the 4th day of May, 1973, said defendant being in open Court and being asked by the Court if he had anything to say why the judgment of the Court and sentence of the Law should not now be pronounced upon him, says 'No Sir'. It is therefore considered by the Court, and it is the judgment of the Court that said defendant is guilty of robbery, as charged in the indictment, in accordance with the verdict of the jury in this cause, and it is the judgment of the Court and sentence of the Law that the defendant, the said Wilburn Lawrence Henry alias Wilbur Henry alias William Henry alias Wilburn Henry, be imprisoned in the Penitentiary of the State of Alabama for a term of fifty (50) years."

The above quoted excerpt shows that counsel was present at the time of sentencing. The judgment entry speaks absolute verity. Keeton v. State, 280 Ala. 140, 190 So.2d 694.

A supplemental transcript was filed in this court in response to a writ of certiorari issued from this court to the clerk of the circuit court for a complete copy of the judgment entry showing particularly whether counsel was present at the time of sentencing.

The supplemental transcript contains the following:

"THE COURT: Henry, You heard the jury verdict. Do you have anything to say as to why sentence should not be pronounced?

"THE DEFENDANT: No, sir.

"THE COURT: All right. It is the judgment and sentence of the Court that

**414**

you be imprisoned in the penitentiary for the term of fifty years.

"MR. SHEFFIELD: Your Honor, we would like to give notice at this time to take a working appeal.

"THE COURT: You understand what a working appeal is?

"THE DEFENDANT: Yes, sir.

"MR. SHEFFEILD: And this man at this stage, up to this point, has not been indigent. However, he is now, and we are going to request of the Court to declare him indigent, so that he might obtain a transcript of the proceedings."

■ As above stated, we think the judgment entry was entirely sufficient but the above quotation from the supplemental transcript shows without doubt that an attorney was present at the sentencing.

■ The appellate courts of this state have held on numerous occasions that evidence of distinct and independent offenses often times referred to as collateral crimes are not admissible in the trial of a person accused of a particular crime. However, there are well-recognized exceptions to this rule and foremost is the "identity exception."

These recognized exceptions to the general rule have developed into general categories and are listed in Wharton's Criminal Evidence, Section 31, as follows:

"These exceptions fall under the following general divisions: (1) Relevancy as part of res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes. It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the Constitution and the laws."

See Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Weatherspoon v. State, 36 Ala.App. 392, 56 So.2d 793.

The state could well have rested its case on the four witnesses who positively identified appellant as one of the robbers. The evidence concerning the Buick automobile was cumulative but that is no reason to exclude it if it sheds light on the material inquiry. The identity of the Buick automobile was only cumulative evidence connecting appellant with the robbery of the supermarket on July 3, 1972. Jackson v. State, 260 Ala. 641, 71 So.2d 825.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., concurs in the result with opinion.

CATES, Presiding Judge (concurring):

This appeal is a judicial titmouse garbed in the plumage of a turkey buzzard masquerading as an Eagle of Liberty. I would vote to affirm it without opinion with a sad adieu to the appellant on his merited journey to durance vile.

A court's judgment entry which shows defense counsel present at the beginning of the cause means—unless otherwise expressly stated—that the defendant continued to be attended by his lawyer. It would be a farce to have to show a lawyer was there on the hour every hour.