Appellant was indicted and convicted of assault with intent to murder. The trial court set sentence at twenty years in the penitentiary. Appellant was properly arraigned in the presence of his attorney and interposed a plea of not guilty and not guilty by reason of insanity. The special plea of not guilty by reason of insanity was subsequently withdrawn. After sentence was imposed, appellant gave notice of appeal and was furnished a free transcript. Trial counsel represents him on appeal.
The evidence presented by the state made out a clear-cut case of assault with intent to murder. Appellant did not testify but offered alibi evidence by several witnesses. The state presented one witness on rebuttal and it is the testimony of this rebuttal witness which forms the basis of this appeal. The facts are not complicated and we see no need to set them out in great detail.
Briefly, the appellant met Miss Dena Fair, the victum of his would-be murderous assault, at the Supermarket disco lounge in Tuscaloosa between 11:30 and 12:00 the night of April 28, 1978. Miss Fair, twenty-five years of age, had traveled to the Supermarket with friends and was ready to return home when appellant asked her to stay a while longer. Forty-five minutes to one hour later, after Miss Fair had danced and had conversation with appellant, she left alone with him in his car to ride to the Racket Club. Discovering that the Racket Club was closed, the couple drove to the apartment of Carol Cooley and Rickey Kelley where several of their friends had gathered. They left the apartment together at 3:00 a.m. on April 29.
Appellant drove Miss Fair to her car at the Supermarket, kissed her good night and made plans to see her the next day. When they got to the Supermarket a police car was parked there and appellant did not stop. He returned later and the police car was still there and appellant kept driving. When he returned the police car was gone and Miss Fair got in her car and started driving to her home. Unrequested, appellant followed her home; he pulled in behind her and turned his lights off, but left the motor running. Appellant walked Miss Fair to the back door and told her he just wanted to make sure she made it home all right. Miss Fair thanked appellant and unlocked the door. While the two were standing at the door appellant asked if he could have a good night kiss. Miss Fair testified that as "he was kissing me good night . . I started . . . walking back . . . and the next thing I knew he was holding my back real tight and the next thing I knew his hands were on my neck, and I couldn't breathe or anything and I started kicking him . . . He put me down on the ground, I don't remember falling or anything but he put me down on the *Page 625 
ground and I couldn't move my legs and I couldn't kick him. . . . [H]is eyes were staring right in my eyes, they were real wide and I was screaming, I was screaming the whole time but nothing was coming out . . . I guess I finally realized my hands were free and I reached back and there was an aluminum folding chair there and I grabbed the chair and I started shaking it to make some noise . . . (When) Mike moved one of his hands from my neck and grabbed my hand, I screamed . . . [W]hen I screamed Mike jumped and ran to his car . . . Mother had heard me scream, my brother and sister heard me scream and they all met there in the living room . . . I said Mike Hayes just tried to strangle me, I said he tried to kill me. . . ." Neither Miss Fair's mother nor her brother or sister who were home that night saw appellant, but her sister heard someone running.
Miss Fair had red marks on her neck and her neck was swollen. She was taken to a local hospital where her neck was x-rayed. She was given pain relieving medication and stayed in bed the next day.
The mother called the police department and an officer arrived a short time later. He observed the red marks on Miss Fair's neck and suggested she be taken to the hospital for x-rays.
The state's rebuttal witness, Miss Sherry Rumsey, twenty-eight years of age, testified that she received a telephone call from the appellant in the early morning hours on May 6, 1978. Appellant came to her apartment approximately ten minutes after calling, around 3:00 a.m. Unknown to appellant Miss Rumsey's boyfriend was in her bedroom when appellant arrived. Miss Rumsey stated that appellant sat on the couch and she sat in a chair beside him. "[H]e proceeded to tell me what was wrong . . . Mike had always been a friend of mine whenever he had any kind of problems he always came to talk to me like a big sister."
After Miss Rumsey had talked with him twenty-five to thirty minutes she "got up, led him to the door . . . I reached for the doorknob, told Mike I would talk to him tomorrow, he took my hand from the doorknob, grabbed me around the back not hard, just put his hands around my back . . . I pushed him back and I said Mike, go on home . . . He grabbed me again . . . [o]n my back, moving up toward my shoulders . . . His hands got on my shoulders and I pushed him back and when I did, he got a wild look in his eyes, his hands came back and grabbed me around the throat and proceeded to choke . . . We struggled, I went around in a circle, I fell on my back and Mike came down on all fours over me . . . His legs were over me and both hands were on my neck and with all his strength he was pushing on my neck . . I couldn't breathe, I didn't know anything to do."
Miss Rumsey's boyfriend heard the disturbance from the bedroom. She stated that "[h]e headed straight for Mike . . He began to pound him . . . Mike was still choking with all his power." He was finally successful in pulling appellant off Miss Rumsey and managed to hold him until the police arrived.
Appellant contends that the trial court committed reversible error in allowing Miss Rumsey's testimony because it was evidence of a separate and distinct crime. Appellant maintains his motion to suppress Miss Rumsey's testimony should have been granted. We do not agree.
As a general rule, in a prosecution for a particular crime, evidence of other acts which of themselves constitute distinct and independent offenses is not admissible. Ex parte Williams, Ala., 350 So.2d 708; Lucy v. State, Ala.Cr.App., 340 So.2d 840, cert. denied, Ala., 340 So.2d 847. See also C. Gamble, McElroy's Alabama Evidence § 69.01 (1) (3rd ed. 1977). However, this well established principle of criminal evidence is subject to several equally well-established exceptions. Mason v. State, 259 Ala. 438, 66 So.2d 557; Scott v. State, Ala.Cr.App., 353 So.2d 36, cert. denied, Ala., 353 So.2d 40; Wilkins v. State, 29 Ala. App. 349,197 So. 75. These recognized exceptions *Page 626 
have developed into general categories, and are listed in Wharton's Criminal Evidence, Section 31, as follows:
 "(1) Relevancy as part of the res gestae. (2) Relevancy to prove identity of person or of crime. (3) Relevancy to prove scienter, or guilty knowledge. (4) Relevancy to prove intent. (5) Relevancy to show motive. (6) Relevancy to prove system. (7) Relevancy to prove malice. (8) Relevancy to rebut special defenses. (9) Relevancy in various particular crimes."
We hold that Miss Rumsey's testimony was properly admitted under two of the above exceptions: relevancy to prove identity and relevancy to prove intent. These exceptions are thus explained.
First, as to the relevancy of Miss Rumsey's testimony to prove identity, the appellant's identity as Miss Fair's attacker was in issue. Although Miss Fair gave a detailed eyewitness account of her assault, no one else witnessed the attack. The defense in this case, unlike the defense in Ex parte Williams, supra, presented alibi witnesses who testified in substance that the appellant was at some other place at the time of the assault, and that drugs had been used at the apartment of Carol Cooley and Rickey Kelley, the inference of the alibi testimony being that Miss Fair did not know who assaulted her, that it could not have been appellant. On rebuttal the state properly showed that the appellant assaulted Miss Rumsey in the same peculiar manner as he had Miss Fair. Miss Rumsey made a positive identification of appellant as her assailant. Thus, under the identity exception alone, Miss Rumsey's testimony would have been admissible.Johnson v. State, 242 Ala. 278, 5 So.2d 632; Humphrey v. State,54 Ala. App. 62, 304 So.2d 617. See C. Gamble, McElroy's Alabama Evidence, § 69.01 (8) (3rd ed. 1977) and cases cited therein for a full discussion on this exception.
Secondly, Miss Rumsey's testimony was relevant to prove intent. If the accused is charged with a crime that requires a prerequisite intent, then prior or subsequent criminal acts are admissible to show that he had the necessary intent when he committed the now charged crime. McElroy's Alabama Evidence, §§ 69.01 (5), 70.01 (2). See Fikes v. State, 263 Ala. 89,81 So.2d 303; McKenzie v. State, 250 Ala. 178, 33 So.2d 488; Hogue v.State, 54 Ala. App. 682, 312 So.2d 86; Wilkins v. State, supra, cert. denied, 240 Ala. 52, 197 So. 81.
Appellant's modus operandi was peculiarly and substantially similar in both attacks. Both attacks occurred around 3 o'clock on Saturday mornings one week apart. Both victims were single women in their mid-twenties and knew the appellant. Both victims were in a one-to-one encounter with appellant when the attacks occurred. The attacks occurred at the victims' homes near the door. Appellant's ploy of attack on the victim was practically the same in both instances. Also, in both cases appellant did not release his stranglehold until an intervening agency occurred; Miss Fair's scream which awakened her family, and Miss Rumsey's boyfriend who was also awakened by the disturbances.
We hold that the admission of Miss Rumsey's testimony clears up any doubt which the jury may have had that appellant's intent toward Miss Fair was an intent to murder, and not some other intent, such as intent to maim or intent to rob. Wilkins, supra. Thus, the intent exception is satisfied.
Since Sherry Rumsey's testimony was properly admitted, no error occurred when the district attorney referred to her testimony in closing argument. Simply put, statements based on facts admissible in evidence are proper. Henley v. State, Ala.Cr.App.,361 So.2d 1148, cert. denied, Ala., 361 So.2d 1152; Kirkland v.State, Ala.Cr.App., 340 So.2d 1139, cert. denied, Ala.,340 So.2d 1140.
The trial court made it plain to the jury that the accused was charged with assault with intent to murder Dena Fair, which charge included assault and battery. He further charged the jury that he allowed into evidence other matters "for the purposes of aiding you in determining whether *Page 627 
or not there is pattern or motive or design or scheme or intent or identity of the defendant as regards this crime and that is there for that limited purpose for your consideration."
At the conclusion of the oral charge defense counsel stated: "The defense says the oral charge is fine, Your Honor, we have no objections."
The record reflects that prior to the instant case appellant pleaded guilty to another indictment charging assault with intent to murder and was sentenced to twenty years in the penitentiary. A murder charge was also pending against him.
We have examined each issue raised in brief. In addition, we have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.